**LLOYD'S UNLIMITED, a corporation, Plaintiff and Appellant,**

v.

**NATURE'S WAY MARKETING, LTD., a corporation, Defendant and Respondent.**

No. 860311–CA.

Court of Appeals of Utah.

April 21, 1988.

Kevin J. Sutterfield (argued), Leslie W. Slaugh, Ray G. Martineau, P.C., Provo, for plaintiff and appellant.

Terry M. Crellin (argued), M. Wayne Western, Thorpe, North & Western, Sandy, for defendant and respondent.

Before GREENWOOD, BILLINGS and BENCH, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff, Lloyd's Unlimited (Lloyd's), initiated this action against defendant, Nature's Way Marketing, Ltd. (Nature's Way), for breach of contract, seeking an accounting and judgment for sums due under the contract. The court found that the parties had entered into a valid and enforceable contract and awarded Lloyd's $416.25. Lloyd's appeals, claiming that the court improperly denied its motion to amend the complaint to include a cause of action for reformation and that the trial court's findings of fact were clearly erroneous. Lloyd's requests modification of the lower court's award and entry of judgment against Nature's Way for $39,710.41. Alternatively, Lloyd's requests that the judgment be vacated and the case remanded. We reverse and remand.

## FACTS

In early 1982, Lloyd Dowdle (Dowdle), president of Lloyd's, and Lynn Burningham (Burningham), president of Nature's Way, began negotiating terms of a contract involving a "coffee extender product" (product). The contract was to provide that Lloyd's would receive a commission from Nature's Way for product sold to Yurika Foods Corporation (Yurika) by Nature's Way in consideration of Lloyd's efforts in inducing Yurika to purchase and market the product. In early August 1982, Dowdle drafted a handwritten document which stated that Lloyd's would receive $1.00 commission for each pound of product sold. On August 11, 1982, after Dowdle and Burningham discussed the document, Dowdle crossed out the commission paragraph he had drafted and inserted a new schedule in the handwritten contract which, as found by the trial court, provided the following commission schedule:

| | |
|---|---|
| 1 unit—60 packets pack: | .25¢ |
| 1 unit—2 lb. bulk pack: | .35¢ |
| 1 unit—5 lb. bulk pack: | 50¢ |
| 1 unit—37 lb. bulk pack: | $1.00 |

The parties then signed the agreement. Several days later, Dowdle's secretary typed the agreement from the handwritten version. The typewritten agreement set forth the same commission schedule as set out above except the commission on the 5 lb. bulk pack was .50¢ rather than 50¢. The typewritten agreement also repeated verbatim the following clause from the handwritten agreement: "This agreement contains the entire understanding of the parties hereto and may not be altered, amended, modified, or discharged in any way whatsoever except by subsequent agreement in writing by all parties hereto." The parties then signed the typewritten agreement and Nature's Way paid Lloyd's $500, representing commission earned from April 24, 1982 to August 1, 1982. The parties did not make a formal accounting of the sizes or amount of the product sold to earn the $500 commission.

Between August 1, 1982 and February 28, 1984, Nature's Way received more than $625,000 for product sold to Yurika but failed to pay any commissions to Lloyd's. Subsequently, Lloyd's initiated this action, alleging in paragraph 5 of its complaint that Nature's Way owed it commissions based on the following commission schedule:

| | |
|---|---|
| 60 packets pack: | $ .25 |
| 2 lb. bulk pack: | .35 |
| 5 lb. bulk pack: | .50 |
| 37 lb. bulk pack: | 1.00 |

Nature's Way's answer to paragraph 5 stated "Defendant denies the validity of the agreement and therefore denies the allegations in paragraph 5 of the Plaintiff's complaint to the effect that defendant is

obligated or indebted to Plaintiff in any sum of money."

After two days of trial, the judge found the contract was enforceable and awarded commissions to Lloyd's based on the lesser commission amounts stated in the typewritten contract, rather than those set forth in Lloyd's complaint. Subsequently, Lloyd's filed a motion to amend its complaint to include a cause of action for reformation of the contract, stating that it was not aware until the second day of trial that Nature's Way contested the commission schedule Lloyd's had asserted in its complaint.

After both parties filed extensive memoranda and several post-trial motions, the court ruled that the typewritten agreement was a valid, integrated and enforceable contract, awarded Lloyd's $416.25, and denied the motion to amend the complaint. The court denied Lloyd's its requested costs incurred in taking Burningham's deposition and in serving Burningham with a subpoena.

On appeal, Lloyd's claims that: 1) the trial court erred in denying its motion to amend the complaint to include a cause of action for reformation; 2) the trial court erred in failing to award Lloyd's its costs of depositions and service of subpoenas; and 3) the trial court's findings of fact are not supported by the evidence.

## I. MOTION TO AMEND COMPLAINT

### A. Amendment of Pleadings

Lloyd's first contention is that the trial court erred in denying its motion to amend the complaint. Amendment of pleadings is specifically addressed in Utah R.Civ.P. 15(b), which states:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. [2] If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence.

There are two parts to Utah R.Civ.P. 15(b). *General Ins. Co. of Am. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 505–06 (Utah 1976). Under the first part of the rule, it is mandatory for the trial court to grant leave to amend pleadings to conform to the evidence to include issues tried by the express or implied consent of the parties. *Poulsen v. Poulsen*, 672 P.2d 97, 99 (Utah 1983); *General Ins. Co.*, 545 P.2d at 505–06. The second part of the rule is permissive and allows the pleadings to be amended when evidence is objected to at trial on the ground that it raises issues not framed by the pleadings. *General Ins. Co.*, 545 P.2d at 506. Utah R.Civ.P. 8(b) states that "[w]hen a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder." Subsection (d) of the same rule further provides that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

The Utah Supreme Court discussed the proper application and purpose of the pleading rules in *Cheney v. Rucker*, 14 Utah 2d 205, 211, 381 P.2d 86, 91 (1963), as follows:

They must all be looked to in the light of their even more fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertain-

ing to their dispute. What they are entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required. Our rules provide for liberality to allow examination into and settlement of all issues bearing upon the controversy, but safeguard the rights of the other party to have a reasonable time to meet a new issue if he so requests.

*Accord Williams v. State Farm Ins. Co.,* 656 P.2d 966, 970–71 (Utah 1982).

### B. Procedural Background

In order to properly assess the validity of the trial court's rulings, we must first provide a rather detailed description of the procedural history of this case.

The record reveals that proceedings in this matter focused on Lloyd's theory of lack of consideration, up until the second day of trial. As stated earlier, Nature's Way's answer to the complaint generally denied liability under the contract, without specifically addressing the commission rate amounts alleged in the complaint. The answer also included an affirmative defense of lack of consideration. Prior to trial, Lloyd's filed a motion for partial summary judgment, seeking judgment in the sum of $31,545.64 plus accruing interest. The motion was supported by the affidavit of a certified public accountant which calculated the amount due under the contract utilizing the commission schedule as alleged in the complaint and invoices of sales made by Nature's Way to Yurika. Lloyd's memorandum in support of the motion and "Statement of Uncontested Facts" again set forth the same schedule as in the complaint. Nature's Way's memorandum in opposition to the motion for summary judgment states "Defendant has no objection to what plaintiff has set out as uncontested facts other than that important uncontested facts were omitted." The memorandum then sets forth additional "facts" but does not mention the commission rate amounts. The court denied the motion for summary judgment.

During the first day of trial, the parties addressed, almost exclusively, the question of what consideration Lloyd's was to provide in order to earn the commissions. Burningham testified that he expected Dowdle to do a lot of traveling to procure sales for Nature's Way, and that in regard to payment of Dowdle's travel expenses, "That's the reason why I offered the commission. And I offered that—I offered it to him because it would have been very lucrative for him." [1]

On the second day of trial, Burningham testified under direct examination as to what the contract said, as follows:

Q. What does it state will be payable for one unit of the two-pound bulk pack?

A. .25 cents.

Q. .25 cents?

A. That's correct.

Q. Quarter of a cent, I guess.

On cross examination, Lloyd's counsel began to question Burningham about the intent of the parties on the commission rate amounts. The trial court sustained Nature's Way's objection to such questioning.

After trial, but before the court entered its findings of fact and conclusions of law, Lloyd's filed a motion for an order granting leave to file an amended complaint to conform to the evidence to include a cause of action for reformation of the contract. Lloyd's also filed a post trial memorandum which included excerpts from the deposition of Burningham, as follows:

Q. Had you made commissions to Lloyd's ... you would pay him 35 cents for each two pound bulk pack?

A. Correct.

Q. Based on the 300 figure?

A. Correct.

Q. For the five pound bulk you would pay him 50 cents based on the 180 figure?

A. Correct.

Lloyd's also submitted Dowdle's affidavit which stated that he habitually noted deci-

---

**1.** This testimony strikes us as inconsistent with Nature's Way's contention that the agreement yielded commissions of only $416.25 over the time period in question.

mal points erroneously, as was done on at least part of the handwritten agreement.

Several months after the trial, the court entered findings of fact, which included the following: the handwritten agreement executed by the parties had commission rates of .25¢, .35¢, 50¢, and $1.00; the typed agreement executed by the parties had commission rates of .25¢, .35¢, .50¢, and $1.00; and the intent of the parties with respect to commissions did not change between execution of the two agreements. Further, the court found that the parties had stipulated to the amount of product sold during the time in question. The court concluded that the typed contract was a valid, integrated and enforceable contract and entered judgment for $487.87 and costs of $138.77.

The court denied the motion to amend the complaint to include a cause of action for reformation.

### C. Application of Law

In this case, when, on the second day of trial, Burningham first testified that the commission for a sixty pound bulk pack was a quarter of a cent, Lloyd's attorney did not object to the testimony on the ground that it was not within the issues framed by the pleadings. Therefore, because no objection was raised, we conclude that there was implied consent to trying of the issue and the first part of Rule 15(b) applies, allowing consideration of the issue. On the other hand, Lloyd's had notice of the issue of commission rates only on the second day of trial, and by the court's rulings, had no adequate opportunity to meet the issue. We, therefore, also find that it was an abuse of discretion to concomitantly disallow Lloyd's to respond to the newly raised issue, by the court's refusal to consider evidence of intent and denial of the motion to amend the complaint to plead reformation of contract. There was no evidence of prejudice which would result to Nature's Way and, indeed, amendment would allow realization of one of the criteria under Rule 15(b)—"presentation of the merits of the action."

Consequently, we hold that the trial court erred in denying the motion to amend to include a cause of action for reformation of the contract where the issue of commission schedules was not raised until the second day of trial and where the court did not allow Lloyd's to submit evidence on the issue of the parties' intent in entering the contract. Because the motion to amend should have been granted, we reverse and remand for further proceedings on the reformation issue.

### D. Reformation of Contract

We further note that the trial court apparently believed that the typewritten agreement could not, as a matter of law, be reformed, because of the integration clause included in the contract.[2] Reformation of a contract is an equitable remedy which must be pled with particularity and established by clear and convincing proof. *Briggs v. Liddell*, 699 P.2d 770, 772 (Utah 1985). The *Briggs* court stated:

> A contract may be reformed for either of two reasons. First, if the instrument does not embody the intentions of both parties to the contract, a mutual mistake has occurred, and reformation is appropriate. Second, if one party is laboring under a mistake about a contract term and that mistake either has been induced by the other party or is known by and conceded to by the other party, then the inequitable nature of the other party's conduct will have the same operable effect as a mistake, and reformation is permissible.

*Id.* at 772. Reformation has also been applied in instances of drafter error. "Reformation is clearly appropriate where there is a variance between the written deed and the true agreement of the parties caused by a draftsman." *Hottinger v. Jensen*, 684 P.2d 1271, 1273 (Utah 1984).

On remand, the court should allow Lloyd's to present whatever evidence it can muster to establish its right to reformation of the contract. Moreover, it is not pre-

---

**2.** The court may have believed reformation was not available for other reasons, but the integration clause was the only rationale mentioned by the court.

cluded from doing so by the integration clause included in the contract. An integration clause may prevent enforcement of prior or contemporaneous agreements on the same subject, but "does not prevent proof of fraudulent representations by a party to the contract, or of illegality, accident, or mistake.... [P]aper and ink possess no magic power to cause statements of fact to be true when they are actually untrue." *Corbin on Contracts*, § 578 at 405–07 (1960).

## II. COUSTS

Lloyd's also contends that the court erred in failing to award it the costs of deposing Burningham and Webb and serving a subpoena on Burningham. Utah R.Civ.P. 54(d) provides that except as the rule otherwise provides, "costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." The general rule is that under Utah R.Civ.P. 54(d) "costs" means those fees which are "required to be paid to the court and to witnesses...." *Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980). However, the Utah Supreme Court has held that the expenses of taking depositions are also allowable as costs if they were reasonably necessary. *John Price Assoc., Inc. v. Davis*, 588 P.2d 713, 715 (Utah 1978). Deposition costs are generally allowed as necessary and reasonable "where the development of the case is of such a complex nature that discovery cannot be accomplished through the less expensive method of interrogatories, requests for admissions and requests for the production of documents." *Highland Constr. Co. v. Union Pac. R.R.*, 683 P.2d 1042, 1051 (Utah 1984). The party claiming entitlement to the costs of depositions has the burden of demonstrating that the depositions were reasonably necessary and whether that burden is met is within the sound discretion of the trial court. *Id.; First Sec. Bank of Utah N.A. v. Wright*, 521 P.2d 563, 567 (Utah 1974). The trial court's ruling on whether to award a party costs of depositions is presumed correct and will not be disturbed unless it is so unreasonable as to manifest a clear abuse of discretion. *First Sec.*

*Bank*, 521 P.2d at 567. The Utah Supreme Court has declined to extend the rule, which allows recovery of the cost of taking a deposition, to expenses such as service of a subpoena. *Frampton*, 605 P.2d at 774.

Lloyd's claims that the depositions of Burningham and Webb were essential for the development and presentation of the case and that Webb's deposition was taken because both parties anticipated that Webb would be unavailable to testify at trial. In addition, Lloyd's argues that because portions of Burningham's depositions were used at trial, it should be awarded the costs of Burningham's deposition. Lloyd's also contends that it should have been awarded the costs of serving Burningham with a subpoena to insure his appearance at the deposition. Nature's Way had previously failed to appear at a hearing on a motion to compel discovery, and Lloyd's believed that the subpoena was necessary to secure Burningham's appearance at the deposition.

Nature's Way, to the contrary, argues that because Lloyd's did not use Webb's deposition at trial and did not publish Burningham's or Webb's deposition at trial, the court properly denied Lloyd's the costs of the deposition. Nature's Way also contends that Lloyd's could have avoided the cost of the subpoena by telephoning Nature's Way's attorney to see if the corporation would produce Burningham for a deposition, and, therefore, the trial court correctly denied Lloyd's the cost incurred in subpoenaing Burningham.

We find that, in view of these arguments, the trial court's decision to deny Lloyd's the costs of the two depositions was reasonable. Apparently, Lloyd's failed to prove that the deposition costs were reasonably necessary and could not be accomplished through less expensive means. Therefore, because the burden of proof was not met and because the trial court's decision was reasonable, we hold that the trial court did not abuse its discretion in denying Lloyd's the costs of taking the depositions.

We also hold that the trial court's decision to deny Lloyd's the cost of subpoenaing Burningham was not unreasonable, in light of *Frampton*, where the court declined to extend the rules for awarding deposition costs to expenses such as service of subpoenas and vacated the trial court's award of such costs. Therefore, we hold that the trial court did not abuse its discretion in refusing to award Lloyd's the costs of serving the subpoena.

### III. FINDINGS

Lloyd's third claim of error is that the trial court's findings are not supported by the evidence. Because we hold that that the trial court erred in denying the motion to amend, we need not reach the issue of whether the findings are supported by the evidence.

The judgment of the trial court is vacated and the matter remanded for further proceedings in accordance with this opinion.

BILLINGS and BENCH, JJ., concur.