**Vera MORGAN, Plaintiff and Appellee,**

v.

**Wallace Jay MORGAN, Defendant and Appellant.**

**No. 880414–CA.**

Court of Appeals of Utah.

June 29, 1990.

---

Bert L. Dart (argued), Dart, Adamson & Parken, David S. Dolowitz, and Julie A. Bryan, Cohne, Rappaport & Segal, Salt Lake City, for defendant and appellant.

Dennis C. Ferguson (argued), Snow Christensen & Martineau, and Craig S. Cook, Salt Lake City, for plaintiff and appellee.

Before DAVIDSON, JACKSON, and LARSON [1], JJ.

OPINION

DAVIDSON, Judge:

Wallace Morgan appeals from the trial court's award of costs and attorney fees, the distribution and valuation of property, and the alimony award in his divorce. We reverse and remand for additional findings.

Wallace and Vera Morgan were married in 1950. At the time of their marriage, Wallace was a dental student attending Washington University in St. Louis, Mis-

[1]. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1989).

souri. After he completed dental school in 1953, the couple moved back to Salt Lake City. In 1986, Vera filed a complaint for separate maintenance; Wallace filed an answer and counterclaim seeking a decree of divorce. The case was tried before the district court in December 1987. In April 1988, the trial court granted Vera a divorce and made rulings on equitable property division and alimony, and ordered Wallace to pay Vera's accounting, appraisal, and attorney fees. Both parties prepared proposed findings of fact and conclusions of law and post-trial hearings were held to discuss each side's objections. The trial court eventually accepted Vera's findings of fact and conclusions of law. Wallace raised several objections, but final findings of fact and conclusions of law and a decree of divorce were entered on May 26, 1988.

In the findings and conclusions, the trial court divided the marital assets and liabilities upon fair market value based primarily on the evidence presented by Vera. The court also ordered that the marital home be sold and the proceeds equally divided, that Wallace pay Vera's legal, accounting, and appraisal fees, and that he pay her $2,000 per month in alimony, to be reduced to $1,700 per month two years after the date of entry of the decree.

We address five issues: (1) the appropriateness of ordering Wallace to pay Vera's attorney fees and costs; (2) the appropriateness of valuing joint bank accounts as of a time prior to trial; (3) the sufficiency of findings to support the court's award of alimony; (4) consideration of tax consequences incident to a sale of marital property; and (5) application of a minority discount factor when valuing Wallace's minority interests in partnerships.

## ATTORNEY FEES AND COSTS

### A. Costs

Wallace first argues that the trial court erred in ordering him to pay Vera's costs, contending that they are not awardable by statute. The decree ordered him to pay accounting fees of $10,973.41 and appraisal fees of $920, both of which were incurred in preparation for trial. He also contends that $11,617.44 of Vera's $75,000 attorney fees bill were improperly included costs.[2] Vera argues that the appraisal, accounting, and attorney fees were not costs, but were instead marital obligations. She contends that the trial court awarded Wallace a greater percentage of the marital estate to cover payment of those expenses.

We review the trial court's award of costs under an abuse of discretion standard. *Frampton v. Wilson*, 605 P.2d 771, 773–74 (Utah 1980); *Lloyd's Unlimited v. Nature's Way Marketing, Ltd.*, 753 P.2d 507, 512 (Utah Ct.App.1988).

"[C]osts are 'generally allowable only in the amounts and in the manner provided by statute,' but the [Utah] Supreme Court 'has taken the position that the trial court can exercise reasonable discretion in regard to the allowance of costs; and that it has a duty to guard against any excesses or abuses in the taxing thereof.' " *Hatanaka v. Struhs*, 738 P.2d 1052, 1055 (Utah Ct. App.1987) (quoting *Frampton*, 605 P.2d at 773–74). Utah Rule of Civil Procedure 54(d)(1) governs cost awards in civil litigation:

Except when express provision therefor is made either in a statute of this state or in these Rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. . . .

The Utah Supreme Court has defined costs to mean "those fees which are required to be paid to the court and to witnesses, and for which the statutes authorize to be included in the judgment." *Frampton*, 605 P.2d at 774. Thus, witness

2. Wallace argues that the following charges are costs, not attorney fees:

| | |
|---|---|
| Appraisal fees: | $4,110.00 |
| Copying costs: | $5,171.00 |
| Depositions: | $ 938.96 |
| Word processing: | $ 511.23 |
| Courier services: | $ 495.00 |
| Local travel: | $ 122.85 |
| Service of process: | $ 211.40 |
| Litigation support: | $ 57.00 |
| Business meal: | $ 23.29 |
| Misc. search | $ 87.00 |
| TOTAL | $11,617.44 |

fees, travel expenses, and service of process expenses are chargeable only in accordance with the fee schedule set by statute. *Id. See generally* Utah Code Ann. § 21–2–4 (Supp.1989) (sheriff's fees); Utah Code Ann. § 21–5–8 (Supp.1989) (witness fees in civil cases). Witness compensation in excess of the statutory schedule is generally inappropriate as a cost. *Frampton,* 605 P.2d at 774.

Furthermore, our appellate courts make a distinction between "legitimate and taxable 'costs' and other 'expenses,' of litigation which may be ever so necessary, but are not taxable as costs." *Id.* For instance, neither land surveys nor appraisal fees, incurred in preparation for litigation, are recoverable as costs. *Stratford v. Wood,* 11 Utah 2d 251, 253, 358 P.2d 80, 81 (1961) (costs of survey made in preparation of trial not recoverable); *Hatanaka,* 738 P.2d at 1055 (survey); *Stevens v. Stevens,* 754 P.2d 952, 959 (Utah Ct.App.1988) (cost of property appraisal). The appraisal and accounting fees here were incurred in preparation for trial and cannot be considered a cost. The trial court abused its discretion in awarding these two items as costs. *See Hatanaka,* 738 P.2d at 1055. We also hold that it was inappropriate for the trial court to award $4,110 in appraisal fees which were included as part of the attorney fees award.

Costs of depositions also are not recoverable unless "the trial court is persuaded that they were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case." *Frampton,* 605 P.2d at 774; *Lloyd's Unlimited,* 753 P.2d at 512.

In *Lloyd's Unlimited,* we stated that the party seeking the cost of depositions bears the burden of proving that the depositions were reasonably necessary. *Id.* at 512. Depositions are reasonably neces-

sary only where the complex nature of the case prevents a party from completing discovery through less expensive methods such as interrogatories, requests for admissions, and requests for the production of documents. *Id.*

Vera argues that the two depositions, for which she seeks costs, were necessary "in order to verify that the information obtained [from Wallace] was correct." In our review of the record, we cannot determine if the trial judge concluded that the deposition fees were reasonably necessary. In the findings and conclusions and decree, the deposition costs were simply awarded as part of the overall attorney fees, without consideration of their necessity.[3] We therefore remand this issue to the trial court to determine if the deposition costs were reasonably necessary. We also note that it was inappropriate for the trial court to award the costs of service of process in excess of that allowed by statute. *Frampton,* 605 P.2d at 774.

The remaining miscellaneous costs[4] are not provided for by statute. These miscellaneous expenses, totalling $6,467.37, are not properly taxable as costs. *See Frampton,* 605 P.2d at 774 (miscellaneous expenses of $395 for a contour model, photographs, and certified copies not taxable as costs). We therefore reverse the trial court's award of these costs.

**B. Attorney Fees**

Wallace next argues that the trial court erred in ordering him to pay Vera's attorney fees because the fees were excessive and the court neither considered his ability to pay nor Vera's need for the award. A trial court has the authority to award attorney fees in divorce proceedings. *Kerr v. Kerr,* 610 P.2d 1380, 1384 (Utah 1980); *Rasband v. Rasband,* 752 P.2d 1331, 1336 (Utah Ct.App.1988). The decision to award fees rests within the sound discre-

---

**3.** Vera's attorney testified that obtaining information from Wallace was difficult and necessitated the taking of at least one deposition to "verify" information. There was no attempt by the court, however, to make findings on the reasonableness of the fee.

**4.** Those costs include copying, word processing, courier services, local travel, litigation support, business meal, and miscellaneous search.

tion of the trial court, but must be based on evidence of financial need and reasonableness. *Huck v. Huck*, 734 P.2d 417, 419 (Utah 1986); *Kerr*, 610 P.2d at 1384; *Rasband*, 752 P.2d at 1336.

> Reasonable attorneys fees are not measured by what an attorney actually bills, nor is the number of hours spent on the case determinative in computing fees, ... [a] court may consider, among other factors, the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Rasband*, 752 P.2d at 1336 (quoting *Cabrera v. Cottrell*, 694 P.2d 622, 624–25 (Utah 1985)).

The decree simply orders Wallace to pay Vera's attorney fees in the amount of $75,000. The findings are deficient in that there is no mention that the trial court considered Vera's ability to pay her own fees or Wallace's ability to pay. *See Kerr*, 610 P.2d at 1384. The findings also fail to show the reasonableness of the requested fee. *See Huck*, 734 P.2d at 419. Although Vera's attorney testified that such fees were reasonable in light of the difficulty of the case, there is no independent attempt by the court to characterize the fee as reasonable. *See Kerr*, 610 P.2d at 1384. Accordingly, we remand for reconsideration of the award of fees and for entry of such additional findings as may be necessary.

## VALUATION OF BANK ACCOUNTS

 Wallace next argues that the court erred by valuing six bank accounts prior to trial. He contends that the bank accounts were working accounts with fluctuating balances and that on the date of trial those balances were substantially lower than the balances listed on pre-trial bank statements produced by Vera.[5]

The trial court should, in most circumstances, value the marital estate as of the time of the divorce decree. *Berger v. Berger*, 713 P.2d 695, 697 (Utah 1985); *Fletcher v. Fletcher*, 615 P.2d 1218, 1222–23 (Utah 1980); *Peck v. Peck*, 738 P.2d 1050, 1052 (Utah Ct.App.1987). Vera argues that the trial court properly exercised its discretion in valuing the accounts by using two- to four-week-old bank statements. She contends that the bank statements were more accurate than Wallace's self-serving testimony. Finally, she asserts that Wallace's alleged obstructive and evasive behavior justified the court's pre-trial valuation.

Without explanation, the trial judge apparently accepted the figures listed on Vera's exhibit even though Wallace testified that the accounts fluctuated daily and that the pre-trial statements were inaccurate. The findings fail to address the accuracy of the lower balances presented by Wallace. Furthermore, we find no evidence in the record suggesting that Wallace hid or drained assets between the date of the last bank statements and trial. *See Peck*, 738 P.2d at 1052 (where one party hides or dissipates assets, the trial court may value property at a date earlier than trial). We note that the findings on this issue are neither "sufficiently detailed" nor "include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (quoting *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979)).

We therefore remand for additional findings as to valuation of these accounts.

## ALIMONY

 We will not disturb the trial court's alimony award "absent a showing of a clear and prejudicial abuse of discretion."

---

5. The bank accounts were valued as follows:

| Accounts | Statements | Wallace's Value |
|---|---|---|
| Dental | $16,642 | $–1,641 |
| Tax | $ 7,821 | $ 3,173 |
| Farm | $ 1,046 | $– 314 |
| Bel Aire | $ 8,667 | $– 966 |
| Broadmore | $ 6,559 | $ –0– |

*Rasband,* 752 P.2d at 1333. Wallace argues that the trial court erred by failing to make sufficient findings concerning Vera's financial condition and needs, her ability to live on the amount of money awarded in the decree, and his ability to make alimony payments.

Alimony findings made by a trial court should consider three factors: (1) the financial condition and need of the party seeking alimony; (2) the seeking party's ability to produce a sufficient income for himself or herself; and (3) the ability of the other party to provide support. *Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985); *English v. English,* 565 P.2d 409, 411–12 (Utah 1977); *see also Smith v. Smith,* 726 P.2d 423, 426 (Utah 1986) (findings of fact must show that decree "follows logically from, and is supported by, the evidence"). The findings of fact and conclusions of law here state that a "reasonable amount to be awarded to plaintiff as alimony is $2,000 per month for two years from the date of entry of the decree. Thereafter, alimony should be reduced to $1,700 per month." In other findings relevant to alimony, the court stated that "Dr. Morgan's current income from his dental practice is likely to decline as he reaches retirement age. The reduction in alimony provided herein is based upon the court's consideration of that decline...." And, the court found that the marital assets awarded to Vera were a factor in its alimony award, although the finding is unclear as to how the award of assets impacted the alimony award.

These findings are insufficient. *See Johnson v. Johnson,* 771 P.2d 696, 699 (Utah Ct.App.1989); *Marchant v. Marchant,* 743 P.2d 199, 207 (Utah Ct.App. 1987). Although there is some evidence in the record concerning each of the parties' incomes and living expenses, the court made no findings concerning Vera's "financial condition and needs, her ability to provide sufficient income for these needs, and [Wallace's] ability to provide support." *Marchant,* 743 P.2d at 207. We have previously stated the purpose of alimony: "to enable plaintiff to maintain as nearly as possible the standard of living enjoyed dur-

ing the marriage and to prevent her from becoming a public charge." *Id.* It is obvious that consideration must be made of the needs and abilities of *both* parties before an award of alimony is made. We remand this issue for adequate findings which support any award of alimony.

## TAX CONSEQUENCES

 Wallace next argues that the trial court failed to consider existing tax liability incurred when he sold his share of an investment partnership. He also alleges that the debt charged to him in the decree requires him to sell a large portion of his stocks, bonds, and other property and that the court should have considered the tax consequences of those future sales.

 We will not disturb a trial court's property division in a divorce case unless the court misunderstood or misapplied the law, the evidence presented on property values clearly preponderates against the findings, or the court's distribution results in such a serious inequity as to constitute an abuse of discretion. *Colman v. Colman,* 743 P.2d 782, 789 (Utah Ct.App. 1987). Furthermore, "[t]he weight and credibility of the witness, including expert testimony, and evaluations of property are matters to be determined by the trier of fact." *Yelderman v. Yelderman,* 669 P.2d 406, 408 (Utah 1983). When settling property matters, the trial court may decline to consider the speculative future effect of tax consequences associated with sale, transfer, or disbursement of marital property. *Alexander v. Alexander,* 737 P.2d 221, 224 (Utah 1987).

The proceeds received from the investment sale were applied by Wallace to reduce a line of credit at Capital City Bank. In the decree, the trial court awarded Vera half of the investment sale proceeds without considering either tax consequences or the reduction of joint marital debt created when the proceeds were applied to reduce the line of credit. According to testimony, a tax liability of approximately $23,000 was incurred as a result of the sale. There is no mention in the findings that the lower

court considered this tax liability. If the tax liability was an accrued debt, and we have no way of determining that question without adequate findings, then the trial court should have reduced Vera's share of the proceeds by her proportionate share of the tax debt.[6]

Furthermore, the trial court apparently failed to adjust the property distributions to account for the reduction in debt on the Capital City Bank line of credit, a joint marital obligation. While it is within the court's discretion to value and distribute property, we again, without findings, cannot determine if the court properly awarded the proceeds when the same proceeds were used to reduce a marital debt.

We remand for additional findings on these issues and for consideration and findings on the tax liability and property award. In light of the remand for reconsideration of these issues, we have no way of determining if Wallace will be required to liquidate assets to pay marital debts. If the court determines that tax consequences are associated with the sale of property, it may consider those consequences, but it has no obligation to "speculate about hypothetical future [tax] consequences." *See Alexander*, 737 P.2d at 224.

## VALUATION OF MINORITY INTEREST

■ Wallace next argues that the trial court should have valued the partnership interests by applying a minority discount factor. He disputes the court's valuation of three partnership interests and argues that the more accurate value is thirty-five percent less than the court's value. Vera concedes that while application of a minority discount is sometimes appropriate, it is inappropriate here. She also argues that two of the partnership agreements contain express provisions for cashing out withdrawing partners. She contends these provisions are controlling. Finally, she contends that a minority discount is only appropriate in those cases in which a sale of the partnership is imminent.

"A minority discount is a reduction in the value of the stock of a party who has a minority interest in a closely held corporation on the theory that the party lacks the voting power to control decisions." *Hayes v. Hayes*, 756 P.2d 298, 299 n. 7 (Alaska 1988). The minority discount is applied on the premise that the owner of the minority interest has limited opportunities to sell and must often discount the sale price because of his minority position. *See Reiling and Reiling*, 66 Or.App. 284, 673 P.2d 1360, 1365 (1983); *see also Lavene v. Lavene*, 162 N.J.Super. 187, 392 A.2d 621, 623–24 (1978) (valuation of minority interest in close corporation is difficult "since a market wherein a willing buyer will meet a willing seller, neither under any compulsion, generally does not exist"). At least one jurisdiction has held that application of a minority discount in valuing minority shares or interests should be applied as a matter of law. *Hayes*, 756 P.2d at 300. Other jurisdictions uphold a trial court's property valuation as long as it falls within the range of values established by the evidence. *In re Marriage of Hoak*, 364 N.W.2d 185, 192–93 (Iowa 1985); *see also Arneson v. Arneson*, 120 Wis.2d 236, 355 N.W.2d 16, 22 (Ct.App.1984); *Bowen v. Bowen*, 96 N.J. 36, 473 A.2d 73, 77 (1984); *Reiling*, 673 P.2d at 1365; *Belt and Belt*, 65 Or.App. 606, 672 P.2d 1205, 1207–08 (1983) *modified on appeal* 68 Or.App. 42, 680 P.2d 390 (1984); *In re Marriage of Jorgensen*, 180 Mont. 294, 590 P.2d 606, 610 (1979).

This court has addressed minority valuation on one prior occasion. *See Weston v. Weston*, 773 P.2d 408, 410 (Utah Ct.App. 1989). In *Weston*, we concluded that the trial court's failure to apply the minority discount was not erroneous since the court's valuation of assets was "within the range of values established by all the testimony." *Id.* The *Weston* court stated, however, that in some circumstances it

---

**6.** At a post-trial hearing, Vera argued that the tax reserve account was intended to cover the $23,000 tax debt. She therefore claimed that no reduction should be made from her share of the investment sale proceeds. However, there was no evidence in the record that the tax debt was paid from this account.

may be appropriate to consider minority values, although it gave no examples of such circumstances. *Id.*[7]

We review the trial court's partnership valuation, giving considerable discretion to its determination of property values. *Argyle v. Argyle*, 688 P.2d 468, 470 (Utah 1984); *Weston*, 773 P.2d at 410. That valuation is given a presumption of validity which we will not overturn in the absence of a clear abuse of discretion. *Weston*, 773 P.2d at 410. When considering the expert's conflicting testimony on valuation, the trial court "is entitled to give conflicting opinions whatever weight [it] deems appropriate." *Id.* (quoting *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987)). For Wallace to challenge the trial court's valuation, he must present evidence on alternative methods of valuation. *Argyle*, 688 P.2d at 470–71.

Wallace owned minority interests in three partnerships: (1) Eckman–Midgley 25%; (2) Sunvest Limited 25%; and (3) Valley Land Partners # 3 Limited 4.44%. The court valued his share of Eckman–Midgley at $309,214.75, Sunvest at $70,959, and Valley Land Partners at $7,360. Wallace does not contest these values, but simply argues that the court should have discounted the values by 35%, the minority discount figure presented by one of his experts.[8]

A certified public accountant testified that a 35% minority discount is generally applied when considering the value of shares in a closely held corporation or the value of minority partnership interests in property:[9]

Throughout my practice as a certified public accountant and a business evaluation expert, I repeatedly run into situations where minority investors find themselves sustaining significant discounts upon the liquidation of an asset when it is in the form of an investment; by that, I mean, if an investor owns minority shares of stock, they are typically not able to sell them in a closely-held company, at least at full market value as might be obtained from those who have majority control.

The same is true when they have minority interest in property.

None of Vera's experts addressed the application of minority valuation. As such, the only evidence on value was presented by her accountant who apparently took the fair market value of the properties, figured Wallace's share of ownership interest, and subtracted his debt.[10]

Based on the evidence before us, we are unable to determine how the court's judgment follows from the evidence. *See Acton*, 737 P.2d at 999. In its findings, the court accepted Vera's valuation without considering the appropriateness of applying the minority discount, even though Wallace presented undisputed minority discount evidence.

Thus, the findings before us implicitly ignore the undisputed minority discount testimony without stating any rationale for excluding the discount. The court is entitled to value the assets "within the range of values established by all the testimony,"

---

7. The *Weston* opinion points out that the remainder of the stock in the corporations was owned by family members, who were the most likely purchasers of the remaining stock. The guaranteed market for the purchase of the stock undoubtedly contributed to the trial court's refusal to apply the minority discount.

8. Wallace argues that application of a minority discount of 35% reduces the value of the partnership interests by a total of $135,636.

9. Wallace's expert testified that a minority interest in a closely held corporation is similar to a minority interest in a partnership.

10. In some circumstances, valuation of partnership interests may be based on buy-out or dissolution provisions contained in the partnership

agreement. Value based on that measurement, however, is not always the most accurate measure of the minority partnership's value. *See Reiling*, 673 P.2d at 1365 (court rejects valuation method based on dissolution value of stock since it did not accurately reflect the value of the stock); *In re Marriage of Morris*, 588 S.W.2d 39, 43–44 (Mo.Ct.App.1979) (court not restricted to various valuation methods provided in redemption agreement when none of the redemption provisions contemplated valuation in case of divorce); *Bowen*, 473 A.2d at 78 (buy/sell agreement does not reflect the true value of the minority interest when the partner remains in the partnership).

*Weston,* 773 P.2d at 410, but that determination, as expressed in its findings, must "be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Acton,* 737 P.2d at 999 (quoting *Rucker,* 598 P.2d at 1338). The findings are insufficient and we accordingly remand.

## CONCLUSION

Upon remand, Wallace is not required to pay those costs which are neither properly taxable under rule 54(b) nor allowable by statute. The trial court should make additional findings on the reasonable necessity of the disputed deposition costs. Additional and more detailed findings are necessary to determine Vera's financial need and the reasonableness of her requested attorney fees; the reason for valuing bank accounts before trial; the appropriateness of considering tax consequences associated with the sale of property; and the valuation of minority partnership interests within the range of values established by testimony. Finally, the trial court should consider the needs of each party and the ability to support themselves or to pay support before awarding alimony.

JACKSON and LARSON, JJ., concur.