**In the Matter of the ESTATE
OF Fenton Glade QUINN,
Deceased.**

**Kip QUINN, Appellant,**

**v.**

**Fenton QUINN, Jr., Appellee.**

**No. 900169–CA.**

Court of Appeals of Utah.

March 27, 1992.

Robert M. Felton (argued), Speciale & Felton, Salt Lake City, for appellant.

B. Kent Ludlow (argued) and Chris L. Schmutz, Nielsen & Senior, Salt Lake City, for appellee.

Before BENCH, P.J., and
GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Appellant Kip Quinn, successor personal representative of the estate of Fenton Glade Quinn, Sr., challenges the district court's award of $56;145.24 in attorney fees and costs to a Salt Lake City law firm that had provided legal services to the estate prior to the original representative's dismissal. We reverse and remand.

## FACTS

On May 24, 1984, Fenton Glade Quinn, Sr. murdered his wife, Dawana Quinn, and then shot and killed himself. Appellee, Fenton Sr.'s son by a previous marriage, was appointed as personal representative of his father's estate, at which time he hired the Salt Lake City law firm of Nielsen & Senior to provide legal services on behalf of the estate. Several years after appellee's appointment, and while disposition of the estate was still unresolved, appellee's stepbrother, appellant herein, petitioned to remove appellee as personal representative on the ground that appellee was squandering the estate's assets on unnecessary legal fees. A hearing was held on the matter in June of 1989, at the conclusion of which the trial court determined that appellee

> may have improvidently incurred legal expenses and costs which approximate $73,000.00 at the present time. There now exists the substantial likelihood that there will be little or nothing remaining for the heirs or creditors and the personal representative may not [be] act[ing] in the best interest of the Estate and he should be removed....

The court granted appellant's motion, removed appellee as personal representative,

1. It is uncontroverted that Nielsen & Senior's relationship with the Quinn estate was severed at the same time as appellee's dismissal from the position of personal representative.

2. The trial court rejected the firm's request for fees incurred in the appeal of the wrongful

and appointed appellant as successor personal representative of the estate.

Upon his appointment, appellant dismissed Nielsen & Senior as attorneys for the estate.[1] The firm then petitioned the court for an award of $63,058.84 in attorney fees and costs, as compensation for legal services the firm had provided to the estate. The petition requested (1) $24,181 in fees and $340.32 in costs for basic estate administration, (2) $6,781 in fees and costs of $184.32 for services relating to a lawsuit filed against Fenton Sr.'s former business partner, (3) $20,706 in fees and $3,952.60 in costs for defending the estate in a wrongful death action brought against the estate by Dawana Quinn's heirs, and (4) $6,560.50 in fees and costs of $353.10 for appealing the adverse judgment entered in the wrongful death action.

The trial court dealt with the firm's fee requests by category, on an all-or-nothing basis, awarding full compensation for the first three matters set forth in the fee petition and denying any recovery for services relating to the appeal of the wrongful death judgment.[2] Appellant, as successor personal representative of the estate, was thus ordered to pay the law firm $56,145.24 from the estate. Appellant now challenges the trial court's determination that the fee and cost amounts submitted by Nielsen & Senior with respect to the first three categories of services were reasonable.

## ATTORNEY FEES

In Utah, attorney fees may only be awarded if authorized by statute or contract. See, e.g., Canyon Country Store v. Bracey, 781 P.2d 414, 419–20 (Utah 1989) (quoting Turtle Management, Inc. v. Haggis Management, Inc., 645 P.2d 667, 671 (Utah 1982)); Occidental/Nebraska Fed. Sav. v. Mehr, 791 P.2d 217, 221 (Utah App. 1990). In the instant case, they are statutorily permissible: Utah Code Ann. § 75–3–

death judgment on the ground that the appeal had not been pursued in good faith. See Utah Code Ann. § 75–3–719 (1990). The trial court's denial of fees for this fourth category of service is not in issue.

718 (Supp.1991) allows recovery of fees incurred in connection with administration of an estate, and Utah Code Ann. § 75–3–719 (1990) provides that fees may be recovered for litigation entered into in good faith on behalf of the estate. However, regardless of whether the basis for an award of fees is contractual or statutory, only a reasonable fee may be recovered. *Canyon Country Store*, 781 P.2d at 420.

■ The determination of what constitutes a reasonable fee is largely a matter within the trial court's sound discretion. *See, e.g., Jenkins v. Bailey*, 676 P.2d 391, 393 (Utah 1984); *Cobabe v. Crawford*, 780 P.2d 834 (Utah App.1989). Nonetheless, in order to foster consistent and equitable fee awards by this state's trial courts, the Utah Supreme Court in *Dixie State Bank v. Bracken*, 764 P.2d 985 (Utah 1988), constructed "practical guidelines" for analyzing the reasonableness of attorney fees, by consolidating the approaches advocated in then-existing case law into a simple four step procedure. *Id.* at 989–90.[3]

■ Under *Dixie*, a trial court should begin its fee analysis by determining exactly what legal work the petitioning attorney or attorneys performed, both in terms of the nature of the work and the time spent in its performance. *Id.* at 990. Second, the court should consider how much of that work was reasonably necessary to adequately conclude the matter for which legal representation had been sought. *Id.* Third, the petitioning attorney's billing rate should be compared with those "customarily charged in the locality for similar services," to ensure the reasonableness of the attorney's rate. *Id.* After consideration of these first three criteria, a trial court can establish a preliminary fee by multiplying the number of *necessary* hours of legal

work performed by the appropriate hourly rate.

Finally, after the preliminary fee is established, *Dixie*'s fourth step asks that courts adjust the amount of that fee, when necessary, to reflect the court's consideration of various criteria set forth in Utah Code of Professional Responsibility DR 2–106.[4] *Id.* These criteria include the novelty and complexity of the issues involved; the likelihood that the representation will preclude the lawyer or lawyers from accepting other employment; the expertise, experience, and reputation of the lawyer or lawyers; the amount involved and results obtained; the time limitations imposed by the client or the circumstances; the length and nature of the attorney-client relationship; and whether the requested fee is fixed or contingent. *Id.* at 989–90. *See also Cabrera v. Cottrell*, 694 P.2d 622, 624 (Utah 1985) (condemning fee determination made without consideration of DR 2–106); *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 173–74 (Utah App.1990).

## I. Standard of Review

■ An award of attorney fees will not be overturned absent an abuse of the trial court's discretion. *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982). An abuse of discretion will be found, and a fee award reversed, only if the trial court's determination of reasonableness is unsupported by evidence in the record. *Id. See Associated Indus. Dev., Inc. v. Jewkes*, 701 P.2d 486, 488 (Utah 1984); *Foxley v. Foxley*, 801 P.2d 155, 158 (Utah App.1990), *cert. denied*, 815 P.2d 241 (Utah 1991).

■ Further, when the evidence addressed to the issue is in dispute, the trial

---

**3.** We note that another Supreme Court opinion, *Cabrera v. Cottrell*, 694 P.2d 622 (Utah 1985), is often cited for the same principles as *Dixie*. We recognize that although these two cases do not characterize the relevant inquiry in exactly the same manner—*Dixie* endorses application of a four step approach to fee determination, while *Cabrera* simply encourages trial courts to consider the provisions of Utah Code of Professional Responsibility DR 2–106—both ultimately recommend consideration of the same factors.

Nonetheless, we have chosen to apply *Dixie* to our review, both because it was decided after *Cabrera*, and because we believe its four step approach is simpler to apply, and will therefore lead to more consistently correct results.

**4.** DR 2–106, which is now Rule 1.5 of the Utah Rules of Professional Conduct, governs the reasonableness of fees an attorney charges his or her client.

court is obliged to make findings of fact supporting the reasonableness of its fee award. *Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.,* 766 P.2d 1074, 1079 (Utah 1988). *See Taylor v. Estate of Taylor,* 770 P.2d 163, 168 n. 6 (Utah App.1989). *See also Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987) (failure to make findings is error "unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment' "). *But see State v. Ramirez,* 817 P.2d 774, 787–88 & n. 6 (Utah 1991) (suggesting some liberalization of *Acton*'s requirement of express findings even absent uncontroverted evidence). These findings must be sufficiently detailed, and include enough subsidiary facts, to disclose the steps by which the trial court's decision was reached. *See Woodward v. Fazzio,* 823 P.2d 474, 478–479 (Utah App.1991). *See also Copier Painting,* 801 P.2d at 174 (attorney fee award reversed because the trial court's findings did not demonstrate consideration of "the factors established by appellate courts as relevant to a reduction in fees"); *Martindale v. Adams,* 777 P.2d 514, 518 (Utah App.1989) (attorney fee award reversed when basis for reducing amount sought in unchallenged fee request was not explained in court's findings). Unless the record clearly and uncontrovertedly supports the trial court's decision, the absence of adequate findings of fact precludes appellate review of the evidentiary basis underlying the trial court's decision and requires remand for more detailed findings by the trial court. *See Woodward,* 823 P.2d at 478–479; *State v. Lovegren,* 798 P.2d 767, 770–71 (Utah App. 1990).

## II. Analysis

█ The trial court's application of the first and third steps under *Dixie* is generally uncontroverted in this case—appellant does not challenge the accuracy of Nielsen & Senior's billing statements, insofar as the statements set forth the amount and nature of the work the firm's lawyers performed, nor does he take issue with the hourly billing rates Nielsen & Senior charged.[5] Instead, appellant grounds his protest in *Dixie*'s second step, and challenges the trial court's implicit determination that all of the services provided by Nielsen & Senior were reasonably necessary for successful conclusion of the matters for which the firm was retained.[6] *Dixie,* 764 P.2d at 990.

Evidence in the record provides material support for appellant's position. Thus, the propriety of the trial court's fee award was not unchallenged, and the trial court was obligated to make detailed factual findings regarding its determination that all of the legal work performed was reasonably necessary. *Taylor,* 770 P.2d at 168 n. 6. *Cf. Lovegren,* 798 P.2d at 767, 771 n. 10 (detailed findings not critical when facts concerning an issue are uncontroverted). We turn now to an examination of the adequacy of the trial court's findings with regard to each of the three matters for which Nielsen & Senior was granted all of the compensation it requested.

### A. Estate Administration

█ With respect to Nielsen & Senior's request of $24,181 as compensation

---

5. Appellant did state in his brief that Nielsen & Senior billed significantly more for some services than did their successor, and that Nielsen & Senior reduced the amount of their fee request by some $15,000 just prior to trial "because they didn't want to bill the estate where more than one attorney had done research on the same topic." However, appellant nowhere expressly accuses Nielsen & Senior of falsifying billing statements or charging exorbitant rates.

6. Appellant also protests the trial court's failure to reduce the fee award after consideration of the criteria contemplated in *Dixie*'s fourth step—specifically, the fact that much of the

firm's work produced no positive result for the estate. However, under the facts of this case, this argument appears substantively indistinguishable from that which appellant makes under step two of *Dixie.* Appellant does not argue Nielsen & Senior performed reasonably necessary work that provided no benefit to the estate. Instead, he claims the work provided no benefit because it was unnecessary. Thus, for purposes of our analysis, we characterize this appeal as solely a step two challenge, i.e., a challenge to the reasonable necessity of the legal work performed.

for basic estate administration, the trial court's oral findings are as follows:[7]

> Well, that is a very large fee in comparison to the size of the estate. This is an exceptionally unusual estate. The fact that both decedents died at the same time, lack of records, the animosity that was generated between the heirs of one estate and the heirs of the other estate, lead me to believe this is an estate where fees larger than would be awarded under the [fee schedule of the pre–1987 Code] is in order. And although the number is pretty large, I think under the circumstances, recognizing the complexity of the estate, I am going to award for the estate administration $24,181 and costs of $340.32....

Thus, the court based its determination of reasonableness on the existence of three circumstances—the "simultaneous" deaths of Mr. and Mrs. Quinn, the lack of records, and the animosity between the parties. In the court's perception, these circumstances made the administration of the Quinn estate a more complex affair than would otherwise have been the case, and justified an award of fees greater than the $6,800 Nielsen & Senior would have recovered under section 75–3–718's pre–1987 fee schedule.

We take no particular issue with the trial court's observation that, because of the complexity of the case, Nielsen & Senior may have deserved a larger fee than would otherwise be expected for an estate of this size. It does not follow, however, that a fee award more than three times greater than that awardable under the pre–1987 fee schedule was in order, particularly since the impact of the three complicating factors mentioned in the court's findings, and the type and amount of legal work necessary to counter those factors, is far from clear in the instant case.

For instance, although the court stated that "both decedents died at the same time," the record conclusively establishes that Dawana Quinn and her husband did not die simultaneously. Further, even if their deaths had been truly simultaneous, the findings fail to mention how such a contingency would necessarily have complicated this estate's administration. *See generally* 23 Am Jur.2d *Descent and Distribution* § 110 (1983). Relatedly, animosity between parties arises in the course of a wide range of legal proceedings, and the court's findings make no mention of how the animosity existing here affected the firm's ability to administer the estate in an efficient and economical manner. Finally, although the findings state that certain records were missing, they wholly fail to indicate the nature of the missing records, their importance to the administrative process, the reason why they were missing, the reason duplicates would not have sufficed, or to provide any other support for the court's determination that the absence of those records justified enlargement of Nielsen & Senior's fee.

In short, the trial court's findings fail to support its determination that, by virtue of the existence of the three complicating circumstances, all of the administrative work Nielsen & Senior performed was reasonably necessary. Given the disputed nature of the evidence, and the seeming incongruity between the facts of the case and the conclusion reached below, we conclude that the absence of detailed findings addressing this matter necessitates reversal.

## B. McGrath Claim

■ During the course of its involvement with the Quinn estate, Nielsen & Senior also commenced a lawsuit on behalf of the estate against Penny McGrath, a business partner of Fenton Sr., who had withheld profits from the sale of a private club she and the deceased had jointly owned. Appellee and Nielsen & Senior were relieved of their respective responsibilities prior to resolution of the suit, and the claim

7. The trial court's findings were made orally, from the bench. When actions are tried without a jury or with an advisory jury, findings of fact may be stated orally and recorded in open court following the close of the evidence. Utah R.Civ.P. 52. However, while such a technique is permissible, the discipline and thoroughness inherent in written findings are likely to result in a superior product where attorney fees are involved, especially where, as here, the requested fees stemmed from a multitude of activities and the billing statements were voluminous.

was eventually settled by appellant and successor counsel for $80,000.

In its fee petition, Nielsen & Senior requested $6,781 as compensation for its participation in the suit, and the trial court awarded this amount. The court's findings were very brief:

> The next area is estate versus McGrath. The amount requested is $6,781 in fees, and the amount of cost, $184.32. I find those amounts to be reasonable, and will award the estate for that portion of the work $6,781 as attorney fees and $184.32 in costs.

Appellant takes issue with these findings on the ground that, since Nielsen & Senior was dismissed as counsel for the estate prior to the ultimate resolution of the action, any work the firm performed on behalf of the estate prior to the firm's dismissal was unnecessary and did not benefit the estate. Appellant's position with regard to this matter is untenable: clearly, legal work performed at the outset of a lawsuit may be necessary for, and contribute to, the future favorable resolution of that suit, and as such may surely be compensable.

We believe that, of the three matters for which fees were granted, the award in this category is best supported by the record and appellant's challenge is least persuasive. Indeed, if we had been asked to review this particular fee award in isolation, unaccompanied by the taint surrounding the original personal representative's dismissal and our concerns regarding the fee awards in the other two matters, we would likely have affirmed it in the absence of a more focused challenge by appellant.

However, such a conclusory determination of reasonableness is inadequate in a case such as this. Appellee's dismissal as personal representative, and our doubts concerning the awards granted in the other two matters, have necessarily cast a shadow over the trial court's fee determination process as a whole. We are therefore unable to accept the trial court's conclusory

determination of reasonableness in the absence of supporting factual findings.

## C. Defense of Wrongful Death Claim

█ Finally, Nielsen & Senior defended the estate in a wrongful death action brought by appellant and Dawana Quinn's other heirs. At the outset of the litigation, appellee believed the value of the estate to be between $100,000 and $175,000,[8] and offered to settle the wrongful death claim for $100,000. The heirs rejected that offer and made a $200,000 counter-offer, which the estate rejected. The action was subsequently litigated, and the heirs were granted summary judgment on the issue of liability and a jury award in the amount of $450,000.

Nielsen & Senior requested $24,658.60 as compensation for representing the estate during the suit. The trial court awarded the firm that amount, and stated:

> In my own view, [the action] probably shouldn't have been defended at that level. There is no defense on liability of wrongful death of a person who is working, has a number of working years left that Dawana Quinn had. Seems unreasonable for the verdict to come in much under $100,000 despite the testimony that was presented. . . . However, in light of the fact that the estate made an offer in the amount of $100,000, which seems to me is a very reasonable offer under the circumstances, considering the situation of the estate, and that was rejected. I am just not so sure that it can be said that the heirs of Fenton Quinn were any more unreasonable than the heirs of Dawana Quinn in this matter.
>
> Seems to me the case should have been settled long before trial. Shouldn't have been this amount of attorney fees to try a wrongful death case, $20,000 in attorney fees isn't a reasonable amount, and based upon the fact that I think a fair offer was made by the estate, for that reason only, I think I am going to award that amount, $20,706 for attorney fees

---

8. As discussed *infra,* this $75,000 variance is due to the fact that, at the time the wrongful death action arose, the McGrath action had not been resolved.

for that piece of work and costs of $3,952.60. . . .

Thus, even though the trial court expressly characterized the requested fee as unreasonable, it nonetheless awarded that amount on the sole ground that Dawana's heirs had acted "unreasonably" in refusing the estate's $100,000 settlement offer, thereby prolonging the resolution of a case that "should have been settled long before trial."

Apparently, the trial court felt that the estate's total value had been estimated at approximately $100,000, and that the estate's $100,000 settlement offer, if accepted, would have effectively transferred all of the estate's major assets to Dawana's heirs, and was therefore a fair offer. Further, the court believed that regardless of the judgment awarded at trial, the heirs' actual recovery was capped by the estate's approximate $100,000 value. The court then concluded that the heirs' rejection of the settlement offer was unreasonable since, regardless of whether they settled the case or litigated it, their final recovery would have been virtually the same.

However, in reaching its conclusion that Dawana's heirs had unreasonably prolonged the litigation of the action, the court failed to recognize that, at the time of settlement negotiations, the McGrath claim had not been settled, and that the total value of the estate was therefore not yet fixed. Indeed, at the time of settlement negotiations, appellee suspected the true value of the estate might be as much as $175,000—almost twice what he had offered Dawana's heirs in settlement of the wrongful death action.[9]

Given this fact, it was clearly not unreasonable for Dawana's heirs to reject the $100,000 settlement offer. Indeed, as subsequent events showed, it was more unreasonable for the estate to have rejected the heirs' $200,000 counter-offer. Considering that, as the trial court stated, the facts of this case provided no defense to liability, appellee must have realized the substantial likelihood that a litigated judgment would exceed $200,000. Since appellee believed the estate to be worth no more than $175,-000, he must have also understood that acceptance of the heirs' $200,000 settlement counter-offer would have had the same effect upon the estate as the inevitable judgment: either way, the net estate was going to Dawana's heirs. Accordingly, by refusing to settle for $200,000, it appears that appellee, and not Dawana's heirs, prolonged the litigation without any real hope of altering the final outcome of the action or its impact upon the estate.

Thus, insofar as the trial court believed the heirs' refusal to settle the wrongful death action was unreasonable, and thereby justified Nielsen & Senior's fee request, the court's finding is clearly erroneous. The court on remand must determine the extent to which fees incurred in defense of the wrongful death action were *reasonably* incurred, and award only that amount.[10]

## COSTS

■■■ As part of the "costs" portion of the trial court's fee award, Nielsen & Senior received compensation for copying costs, filing fees, long distance telephone charges, jury fees, and postal charges incurred during the firm's representation of the estate. Appellant now claims that the trial court abused its discretion in awarding compensation for these expenditures, insofar as they arose from either the firm's litigation of the McGrath claim or its defense of the estate in the wrongful death

---

9. When asked what the estimated value of the estate was at the time of the wrongful death action, one Nielsen & Senior lawyer testified that "[i]nitially I believe I felt that the estate was probably worth about somewhere between $100,000 and $175,000 or so, and it was uncertain because at that point in time, which was ·

prior to the trial, we were not sure how the claim against Penny McGrath would turn out."

10. It seems likely that fees incurred after appellee rejected the heirs' counter-offer were not reasonably incurred, although findings on remand might establish some rationale for fees

action.[11] Appellant claims that such an award conflicts with the Utah Supreme Court's definition of "costs." *See Morgan v. Morgan*, 795 P.2d 684, 686 (Utah App. 1990) ("The Utah Supreme Court has defined costs to mean 'those fees which are required to be paid to the court and to witnesses, and for which the statutes authorize to be included in the judgment.' ") (quoting *Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980)).

Appellant's argument fails to recognize that, although the trial court characterized the non-fee portion of Nielsen & Senior's petition as a request for "costs," that term, as defined in *Morgan*, is not applicable to the instant situation. *Morgan* was an appeal from a civil action, and as such its holding interprets Utah Rule of Civil Procedure 54(d). In the instant case, however, the litigation was undertaken on behalf of an estate, and our review is governed by Utah Code Ann. § 75-3-719 (1990). Section 75-3-719 specifically states, with our emphasis, that "[i]f any personal representative or person nominated as a personal representative defends or prosecutes any proceeding in good faith, whether successfully or not, he is entitled to receive from the estate his *necessary expenses and disbursements*." We interpret the phrase "expenses and disbursements" to encompass a wider range of expenditures than does the term "costs" as contemplated in Rule 54(d). Accordingly, we do not believe the trial court abused its discretion in awarding Nielsen & Senior compensation for those expenditures, insofar as they were necessary. We note, however, that expenses incurred through the performance of unnecessary legal work are themselves unnecessary, and are not compensable under section 75-3-719.

## CONCLUSION

In all three categories of legal services for which Nielsen & Senior received the full amount of their requested attorney fees and costs, the trial court's factual findings failed to address the disputed issue of whether all of the legal work the firm performed was reasonably necessary. Accordingly, we reverse the trial court's award, and remand for findings explicitly addressing the reasonable and practical necessity of any work for which Nielsen & Senior requested fees. Further, the trial court is directed to deny reimbursement for any costs, expenses, or disbursements that were incurred through the performance of unnecessary work, but otherwise to permit reimbursement of those advances.

"We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached." *Allred v. Allred*, 797 P.2d 1108, 1112 (Utah App.1990). In the absence of detailed findings of fact, this court fails to comprehend how the trial court could dismiss the estate's original personal representative for wasting the estate's assets on unnecessary legal fees, and then award the lion's share of those very fees to the attorneys who generated them. Clearly, the trial court believed that a portion of the legal services for which Nielsen & Senior sought compensation were of questionable necessity. Especially given this fact, the trial court's fee determination, to survive appellate review, would have to be supported by detailed findings of fact establishing the evidentiary basis for the court's conclusion that, with regard to three of the four categories of services for which compensation was requested, *all* of the legal services performed were necessary. The conspicuous absence of such findings, against the background of this case, leaves us none too confident in the final fee award.

Reversed and remanded for proceedings consistent with this opinion.

GREENWOOD, J., concurs.

BENCH, Presiding Judge (dissenting):

I respectfully dissent.

---

incurred beyond that point that has not suggested itself to us.

**11.** Appellant does not challenge the trial court's interpretation of the term "costs" with regard to

the estate administration. Utah Code Ann. § 75-3-805(b) (1990) specifically permits recovery of "costs and expenses of administration."

The trial court explained why it found the fees to be reasonable. The findings are therefore adequate. Because appellant has not marshaled the evidence to show that the trial court's oral findings on reasonableness are clearly erroneous, I would affirm the award.