James R. WESTON, Plaintiff, Appellant and Cross-Respondent,

v.

Pat L. WESTON, Defendant, Respondent and Cross-Appellant.

No. 870561-CA.

Court of Appeals of Utah.

May 4, 1989.

---

George W. Preston, Logan, for plaintiff, appellant and cross-respondent.

Lyle W. Hillyard, Larry E. Jones, Logan, for defendant, respondent and cross-appellant.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

This appeal arises out of a divorce action initiated by plaintiff, James R. Weston, against defendant, Pat L. Weston, and the trial court's valuation and division of stock in closely held corporations.

Plaintiff and defendant were married for twenty-six years. They had two children who were nine and eleven at the time of trial. Defendant was awarded custody of the two children subject to plaintiff's right of visitation. The court ordered plaintiff to pay $325 per month child support for each child, based on plaintiff's potential income of $4,000 per month. Defendant had an income of $200 a month at the time of trial and was awarded $1 per year alimony. However, because her expenses as a real estate salesperson exceeded her income, the court found defendant had no income.

Plaintiff was part owner of the issued stock of three closely held corporations: Central Milling Company, Inc.; Weston St. George, Inc.; and Weston Lamplighter Motels, Inc. In assessing the marital estate, the trial court valued plaintiff's stock interests as follows: Central Milling Company at $100,000, Weston St. George at $30,000 and Weston Lamplighter Motels at $750,-000. After the trial court divided the parties' various assets and liabilities, and awarded plaintiff all of the corporate stock, the net property awarded to plaintiff exceeded that awarded to defendant by $717,-720. To equalize the property division, defendant was awarded an additional $358,-680 to be paid by plaintiff, secured by a lien on one-half of plaintiff's stock in the three corporations. Plaintiff was ordered to pay the $358,680 over fifteen years at a rate of $1,000 per month, with no interest to accrue until June 11, 1991. Commencing July 11, 1991, interest would begin to accrue and plaintiff would be required to pay monthly payments consisting of $1,000 principal and accrued interest. Defendant was also awarded $5,000 in attorney fees. Plaintiff appeals the court's valuation of the stock in Weston Lamplighter Motels and Weston St. George. Plaintiff also appeals the court's order for a pay out as opposed to an in-kind division of the stock. Defendant cross appeals the court's valuation of the Central Milling Company stock.

### Valuation of the Stock

■ We first examine whether the trial court erred in its valuation of the stock in Weston Lamplighter Motels, Weston St. George, and Central Milling Company. The court's valuation of the stock is a

factual determination. *See Argyle v. Argyle*, 688 P.2d 468, 471 (Utah 1984). Accordingly, we review the court's finding regarding the valuation of the stock under the "clearly erroneous" standard of rule 52(a) of the Utah Rules of Civil Procedure. Under this standard of review, findings of fact will be set aside only if they are "against the clear weight of evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). *See also Jeffries v. Jeffries*, 752 P.2d 909, 911 (Utah Ct.App. 1988).

The issue of proper valuation of marital assets was addressed in *Newmeyer v. Newmeyer*, 745 P.2d 1276 (Utah 1987), where the trial court heard testimony regarding the value of the parties' house. Plaintiff's expert valued the home at $112,000 and defendant's expert valued it at $122,000. The court found the house worth $117,000. *Id.* at 1278. The finding was challenged on the basis that the trial court improperly split the difference between the experts' figures. In affirming the trial court's finding on the value of the house, the Utah Supreme Court stated, "[w]hen acting as the trier of fact, the trial judge is entitled to give conflicting opinions whatever weight he or she deems appropriate." *Id.* at 1278. *See also Ebbert v. Ebbert*, 744 P.2d 1019, 1023 (Utah Ct.App.1987).

To determine the stocks' value, the court heard both parties' expert witnesses, as well as plaintiff's testimony. Plaintiff's expert, a financial analyst, valued the stock as follows: Central Milling Company at $140,000; Weston St. George at $20,000; and Weston Lamplighter Motels at $540,000. All three valuations included a 35% discount for the lack of marketability of stock in closely held corporations. Defendant's expert, a real estate appraiser, valued the underlying assets and applied the appropriate percentages of stock ownership to arrive at the stocks' values. Defendant's expert did not value Central Milling Company but found plaintiff's interests in

Weston Lamplighter Motels and Weston St. George to be worth $1,635,333 and $130,000, respectively.

Plaintiff testified his stock in Central Milling Company was worth between $80,000 and $100,000. He valued the Weston St. George interest at $80,000 and the Weston Lamplighter Motels interest at $145,000.

The court accepted plaintiff's valuation of Central Milling Company at $100,000, and valued the Weston Lamplighter Motels interest at $750,000 and the Weston St. George interest at $30,000. The last two figures were the same as plaintiff's expert provided, but without a 35% discount.

In this case, the trial court weighed each witnesses' testimony as to the stocks' value. As in *Newmeyer*, the trial court found the value of the assets to be within the range of values established by all the testimony. Although it may be appropriate in some cases to consider a discount in value because of closely held corporate stock's lack of marketability, we cannot say that the court's findings on the value of plaintiff's stock interests were clearly erroneous or constitute an abuse of discretion.[1]

### The Pay Out Order

We next address plaintiff's contention that the court erred in ordering him to pay $358,680 to defendant, rather than ordering an in-kind distribution of the stock. In dividing the marital estate, the trial court can enter such orders concerning property distribution and alimony as are equitable. Utah Code Ann. § 30–3–5 (1987). "In making such orders, the trial court is permitted broad latitude, and its judgment is not to be lightly disturbed, so long as it exercises its discretion in accordance with the standards set by this Court." *Newmeyer*, 745 P.2d at 1277; *see also Rasband v. Rasband*, 752 P.2d 1331, 1335 (Utah Ct.App. 1988). In exercising its broad discretion, the trial court may fashion a variety of methods for dividing assets. *See Naranjo*

---

1. The trial court may have been influenced by the fact that the remainder of the stock was owned solely by members of plaintiff's family, who were, therefore, the most likely potential buyers of plaintiff's stock.

v. *Naranjo,* 751 P.2d 1144, 1147–48 (Utah Ct.App.1988). There is no fixed formula for the division of marital property. *Berry v. Berry,* 635 P.2d 68, 69 (Utah 1981); *Fletcher v. Fletcher,* 615 P.2d 1218, 1222 (Utah 1980); *Naranjo,* 751 P.2d at 1146. Further, "[i]t is the court's duty to make a division of the property and income in a divorce procedure so that the parties may readjust their lives to the new situation as well as possible." *Argyle,* 688 P.2d at 471.

In this case, the trial court ordered plaintiff to pay defendant $358,680 to equalize the marital estate, with payment to take place over fifteen years. Plaintiff's primary objection to the pay out order is based on his calculation that, in 1991, when interest begins to accrue, plaintiff's monthly payments, including child support, will rise to $4,758. This exceeds plaintiff's estimated monthly income of $4,461. Therefore, he argues he will not be able to make the payments and will be forced to either default or declare bankruptcy.

■ Marital assets consisting of stock in a closely held family corporation can be distributed in divorce proceedings by several alternate means, including division of the stock, awarding offsetting property, or cash payments over time. *Lee v. Lee,* 744 P.2d 1378, 1380–81 (Utah Ct.App.1987). Three Utah Supreme Court cases have examined trial court orders distributing corporate stock or similar assets. *Argyle,* 688 P.2d at 470; *Savage v. Savage,* 658 P.2d 1201 (Utah 1983); *Berry,* 635 P.2d at 69–70. In *Argyle,* the Utah Supreme Court affirmed the trial court's order requiring defendant to make a pay out to plaintiff of stock in a family corporation, where a continued economic relationship would have potentially caused future problems between the parties and the payment schedule reasonably fit the realities of the parties' financial situation. In *Argyle,* the principal marital asset was stock in Argyle Ranch, Inc., a business owned and operated by defendant's family, and plaintiff's income was negligible. The trial court awarded plaintiff one-half of the value of the stock in cash, $463,000, to be paid by

defendant over fifteen years with interest, but awarded no alimony.

In comparison, in *Savage,* the supreme court affirmed the trial court's award of an in-kind distribution of stock held in a closely held corporation to plaintiff, stating that the trial court had no reasonable alternative because the value of the stock was "not proved by a preponderance of the evidence and therefore [the trial court] acted properly in refusing to structure a pay-out schedule based on it." *Savage,* 658 P.2d at 1204. In addition, the court noted that defendant clearly could not afford any of his proposed pay out schedules. *Id.* The court observed, however, that "whenever possible, continued joint ownership by divorced spouses of closely held corporate stock should be avoided." *Id.* at 1205.

Similarly, in *Berry,* the court focused on defendant's inability to comply with the court's order to buy out plaintiff's interest in a partnership and reversed the trial court's order requiring defendant to purchase plaintiff's one-half interest in the partnership because it was "unfairly weighted in her favor and create[d] a burden upon him which he should not be expected to bear at this time under present circumstances." *Berry,* 635 P.2d at 70. In addition, compliance with the trial court's order would have provided defendant with only $300 per month to live on, while plaintiff would have approximately $1,440 per month. *Id.* at 69. Finally, in both *Savage* and *Berry,* substantial alimony was awarded, at $2,000 and $300 per month respectively. *Savage,* 658 P.2d at 1203; *Berry,* 635 P.2d at 69.

■ Unlike *Savage* and *Berry* and like *Argyle,* defendant in this case was awarded only nominal alimony of $1 per year, and her earning capacity was substantially less than plaintiff's. As stated in *Newmeyer v. Newmeyer,* 745 P.2d 1276 (Utah 1987),

[i]n determining whether a certain division of property is equitable, neither the trial court nor this Court considers the property division in a vacuum. The amount of alimony awarded and the relative earning capabilities of the parties are also relevant, because the relative

abilities of the spouses to support themselves after the divorce are pertinent to an equitable determination of the division of the fixed assets of the marriage. *Id.* at 1279 n. 1. The property award payments were obviously intended to compensate for the lack of alimony, to provide defendant with a monthly income towards meeting her living expenses, and took into account the fluctuations and uncertainties of plaintiff's income. In addition, unlike *Savage*, in this case the value of the stock was established by substantial evidence. Moreover, the trial court delayed interest accrual for four years and extended the pay out over enough time to enable plaintiff to appropriately plan his affairs so he could comply with the order. Plaintiff's income was derived solely from his employment with the corporations in which he owned the substantial stock interests at issue in this divorce action. The trial court, no doubt, believed that plaintiff could exercise control over his income and could potentially borrow funds from his family members or others to pay defendant, and collateralize such borrowings with his stock, only half of which was encumbered by defendant's lien. Also, the stock in this case was in corporations owned exclusively by plaintiff's family.[2] Thus, unlike *Savage* and *Berry*, it is not clear that plaintiff could not afford the pay out. In these circumstances, an in-kind division would give defendant a minority interest in assets over which she would have virtually no control and from which she would have no assurance of receiving income, because plaintiff and his family own the majority interest and have exclusive control of business operations. Also, had an in-kind distribution been ordered, the continued economic relationship could create a breeding ground for future conflicts concerning the business between defendant and plaintiff, thus interfering with their abilities to proceed with their separate lives. Therefore, we find no abuse of discretion in the trial court's order requiring plaintiff to pay out to defendant a portion of the value of the stock in plaintiff's closely held corporations.

■ Defendant requests an award of attorney fees incurred in defending this appeal. Defendant received an award of attorney fees below, and has successfully defeated plaintiff's appeal. She is entitled to recover her reasonable attorney fees incurred on appeal insofar as attributable to resisting plaintiff's appeal.[3] We remand for determination of that amount. *Ehninger v. Ehninger*, 569 P.2d 1104, 1106 (Utah 1977); *Maughan v. Maughan*, 102 Utah Adv.Rep. 44, 47 (Ct.App.1989).

The judgment of the trial court is affirmed. We remand the case to the trial court for a determination of reasonable attorney fees incurred on appeal to be awarded to defendant.

GARFF and ORME, JJ., concur.

---

2. *See* Note 1, *supra.*

3. Defendant's cross-appeal is without merit and attorney fees incurred in connection therewith are not recoverable.