**Vera MORGAN, Plaintiff and Appellee,**

v.

**Wallace Jay MORGAN, Defendant and Appellant.**

**No. 910517–CA.**

Court of Appeals of Utah.

May 17, 1993.

Certiorari Denied Sept. 1, 1993.

Bert L. Dart (argued) and Kent L. Kasting, Dart, Adamson & Donovan, Salt Lake City, for defendant and appellant.

Dennis C. Ferguson (argued), Williams & Hunt, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

Dr. Wallace Morgan appeals the trial court's amended decree of divorce, challenging the court's valuation and distribution of the parties' property and the award of alimony and attorney fees to Vera Morgan. We affirm.

## FACTS

The Morgans were married June 29, 1950. In June 1986, Mrs. Morgan filed a complaint for separate maintenance. In response, Dr. Morgan filed an answer and counterclaim seeking a decree of divorce. On May 26, 1988, the trial court entered a decree of divorce that (1) effected an extensive property distribution between the parties; (2) awarded Mrs. Morgan alimony in the amount of $2,000 per month for two years from the date of the entry of the decree, at which time alimony would decrease to $1,700 per month; and (3) awarded Mrs. Morgan attorney fees and costs in the amount of $75,000.

Dr. Morgan appealed the trial court's decree to this court, challenging the trial court's valuation and distribution of the couple's property and claiming that the trial court erred in awarding alimony, attorney fees and costs to Mrs. Morgan. In that appeal, this court reversed the trial court's award of certain costs to Mrs. Morgan and remanded the remaining issues to the trial court for additional and more detailed findings. *See Morgan v. Morgan,* 795 P.2d 684, 692 (Utah App.1990).

On remand, following a hearing, the trial court entered its amended findings of fact, conclusions of law and decree dividing the property between the parties, awarding alimony to Mrs. Morgan in the amount of $2,000 per month for two years from the date of entry of the decree and $1,700 per month thereafter, and awarding her attorney fees in the amount of $67,567.35.[1]

Dr. Morgan appeals, claiming that the trial court erred in: (1) entering findings of fact and conclusions of law that do not accurately reflect the court's minute entry; (2) valuing and distributing the parties' property; (3) awarding alimony to Mrs. Morgan; and (4) awarding attorney fees to Mrs. Morgan.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Dr. Morgan argues that the trial court erred in entering its amended findings of fact, conclusions of law and decree because they are inconsistent with the court's written minute entry as to the distribution of the parties' stocks. Specifically, he asserts that pursuant to the trial court's minute entry, he was awarded one hundred percent of the parties' stock, not seventy-five percent as reflected in the amended findings of fact, conclusions of law and decree.[2] Mrs. Morgan responds

---

1. While the amended findings of fact are considerably more detailed than the court's original findings, the property division and alimony award set forth in the amended findings are substantially the same as in the court's original findings.

2. Dr. Morgan bases this claim on a minute entry that states:

The Court adopts paragraph 5(I) ... as set forth in [Dr. Morgan's] proposed supplemental findings of fact and conclusions of law to the effect that the net value of the stocks at the time of trial was $303,557.00. The exact language as proposed by [Dr. Morgan] will be adopted.

Paragraph 5(I) of Dr. Morgan's proposed supplemental findings of fact provides:

that Dr. Morgan's claim is moot because the trial court, in a subsequent order and judgment, ordered Dr. Morgan to transfer twenty-five percent of the parties' stock to Mrs. Morgan. That order explicitly stated that the trial court did not intend to award one hundred percent of the parties' stock to Dr. Morgan by its minute entry, but that it intended to reaffirm its seventy-five/twenty-five percent division as reflected in the amended findings of fact and conclusions of law.

In *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040 (Utah 1983), the Utah Supreme Court stated that "[a]n appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." *Id.* at 1043 (citations omitted). In that case, the Supreme Court explained:

> [I]f appellants were seeking on this appeal to prevent the foreclosure sale, *and because of their failure to obtain a stay of execution, the sale were legally carried out during the .pendency of the appeal and the time for redemption had run, the appeal would be moot.*

*Id.* (citations omitted) (emphasis added).

█ In the case at bar, Dr. Morgan claims that the trial court intended to award him one hundred percent of the parties' stock notwithstanding the court's amended decree which reflects that he was only awarded seventy-five percent of that stock. However, because Dr. Morgan did not file a stay of execution on the amended decree pending this appeal, Mrs. Morgan

appropriately filed a motion for an order to show cause why Dr. Morgan had not transferred her twenty-five percent share of the parties' stock as provided for in the amended decree. The trial court, in ruling on such motion, stated:

> The Court rejects [Dr. Morgan's] assertion that it ever intended to modify the Decree of Divorce by awarding all stock in the marital estate to [Dr. Morgan]. As set forth in its Amended Findings And Conclusions, the Court corrected the values assigned to the stock to be consistent with the stipulated value agreed to by the parties, but reaffirmed its percentage distribution of the stock.

The court then ordered Dr. Morgan to transfer the stock, explicitly stating that the seventy-five/twenty-five percent distribution as provided for in the ·amended decree was proper. Accordingly, any dispute as to the division of the stock is eliminated, and Dr. Morgan's claim is moot. *See id.* at 1043.[3]

## PROPERTY DISTRIBUTION

As to the trial court's property distribution, Dr. Morgan claims that the trial court erred in: (1) valuing certain bank accounts prior to trial; (2) failing to apply a minority interest discount factor in valuing his partnership interests; and (3) failing to adjust the property distribution to reflect a reduction in debt on the Capital City Bank line of credit.

█ "There is no fixed formula upon which to determine a division of properties

---

The parties owned substantial stocks at the time of the trial, and the parties both stipulated that the net value of those stocks as of the time of trial was $303,557.00. The Court finds that these stocks should be awarded to [Dr. Morgan] as a means of equalizing the distribution of assets between the parties as reflected on Exhibit "A" attached hereto.

**3.** Moreover, even were we to reach Dr. Morgan's claim that he was awarded one hundred percent of the parties' stock, such claim would nonetheless fail. Under *Hartford Acc. & Indem. Co. v. Clegg*, 103 Utah 414, 135 P.2d 919 (1943), the trial court's written minute entry concerning distribution of the stocks was superseded by the court's amended findings of fact, conclusions of law and decree. *Id.* at 922; *accord State ex. rel.*

*Hurley*, 28 Utah 2d 248, 501 P.2d 111, 114–15 n. 2 (1972) (Crockett, J., dissenting). In the instant case, the court's minute entry was nothing more than a memorandum from which the amended findings, conclusions and decree were to be drawn and did not constitute a final order of the court. *See Clegg*, 135 P.2d at 922. Rather, the amended decree, along with the findings of fact and conclusions of law in support thereof, constituted the trial court's final order and judgment. Therefore, because the language of that decree takes precedence over any alleged inconsistent language in the court's minute entry addressing the division of the parties' stock, the amended decree's award of twenty-five percent of that stock to Mrs. Morgan governs.

in a divorce action.... " *Watson v. Watson,* 837 P.2d 1, 5 (Utah App.1992) (quoting *Naranjo v. Naranjo,* 751 P.2d 1144, 1146 (Utah App.1988)). "Determining and assigning values to marital property is a matter for the trial court, and this Court will not disturb those determinations absent a showing of clear abuse of discretion." *Talley v. Talley,* 739 P.2d 83, 84 (Utah App. 1987) (citations omitted). "In making such orders, the trial court is permitted broad latitude, and its judgment is not to be lightly disturbed, so long as it exercises its discretion in accordance with the standards set by this court." *Newmeyer v. Newmeyer,* 745 P.2d 1276, 1277 (Utah 1987) (citations omitted). "It is therefore incumbent on the appealing party to prove that the trial court's division violates those standards, or that the trial court's factual findings upon which the division is grounded are clearly erroneous under Utah Rule of Civil Procedure 52(a)." *Id.* (citation omitted). Further, evaluation of the weight and credibility of testimony and evidence is a matter for the trier of fact. *Yelderman v. Yelderman,* 669 P.2d 406, 408 (Utah 1983).

### Valuation of Bank Accounts

■ Dr. Morgan claims that the trial court erred in valuing five bank accounts as of a time just prior to trial, rather than as of the date of trial itself. In support of this claim, he asserts that because those accounts were "working accounts," they decreased substantially between the time the court valued them and the time of trial.[4] Mrs. Morgan responds that, based on the evidence before it, the trial court's valuation of the bank accounts was proper.

■ While the marital estate is generally valued at the time of trial, *Berger v. Berger,* 713 P.2d 695, 697 (Utah 1985), such is not an intractable rule. *See Morgan v. Morgan,* 795 P.2d 684, 688 (Utah App.

1990); *Peck v. Peck,* 738 P.2d 1050, 1052 (Utah App.1987). However, the trial court's findings must be sufficiently detailed to explain its basis for deviating from the general rule. *Morgan,* 795 P.2d at 688.

As to the valuation of the bank accounts in the present case, the trial court expressly found:

I. *Cash and Securities.*

At the time of trial the Court was concerned that the bank accounts in question had been and were then under the control of [Dr. Morgan]. The Court was not convinced that the reduction of the accounts from the amounts that the bank statements had been showing as balances to the much reduced figures claimed by [Dr. Morgan] were legitimate reductions. It was simply too easy to reduce the accounts claiming the money had been paid on specific marital debts but there was no evidence thereof when it would be just as plausible for [Dr. Morgan] to have reduced the accounts temporarily to establish lowered balances and then to have re-established those funds after the trial in those same accounts. The Court felt then and now feels that *the much more reliable evidence is the evidence as reflected by the actual bank accounts prior to the date of trial* and when you compare that with the average daily balance for those accounts, the amounts determined by the Court herein are very close to the average. Additionally, it should be noted that *[Dr. Morgan] failed to show evidence that he had expended the balances shown in these accounts some two and one-half to three weeks prior to trial on any marital obligation. As a matter of fact, his testimony was that he did not know the current balance of each of the accounts.*

**4.** The bank accounts at issue were valued as follows:

| Account | Bank Statement | Dr. Morgan's Value |
|---|---|---|
| Dental | $16,642 | $–1,641 |
| Tax | $ 7,821 | $ 3,173 |
| Farm | $ 1,046 | $– 314 |
| Bel Aire | $ 8,667 | $– 966 |
| Broadmore | $ 6,559 | $ –0– |

(Emphasis added). Moreover, this finding was amply supported by the evidence before the trial court. In addition, the record indicates that Dr. Morgan did not even attempt to introduce into evidence more recent bank statements relating to the claimed values of the respective accounts for the purpose of rebutting the less current statements proffered by Mrs. Morgan and admitted by the trial court. Rather, he simply proffered self-produced adding machine tapes which purported to show substantial, yet uncorroborated, disbursements from the bank accounts. Given that there was sufficient reliable evidence to support the trial court's finding regarding the pretrial valuation of these bank accounts, as well as Dr. Morgan's failure to provide any documentation to rebut such evidence, the trial court did not abuse its discretion in valuing the parties' bank accounts as of a time just prior to trial.

### Minority Interest Discount

Dr. Morgan asserts the trial court erred in failing to apply a minority interest discount factor in valuing his interests in certain partnership property. Specifically, he argues that the value of his interest in (1) Eckman–Midgley and Associates, (2) Sunvest Limited, and (3) Valley Land Partners # 3 Limited should be discounted by a thirty-five percent minority discount ·factor. Mrs. Morgan responds that application of a minority discount to Dr. Morgan's partnership property is not appropriate under the facts of this case, and thus, the trial court did not abuse its discretion in failing to apply the same.

■ We review the trial court's valuation of partnership property under a "clearly erroneous" standard of review, providing considerable discretion to the court's property values. *Weston v. Weston,* 773 P.2d 408, 410 (Utah App.1989); *accord Morgan,* 795 P.2d at 691. Such valuation is presumed valid and will not be overturned in the absence of a clear abuse of discretion. *Morgan,* 795 P.2d at 691. When considering testimony regarding valuation of property, the trial court "is entitled to give conflicting opinions whatever weight [it] deems appropriate." *Weston,* 773 P.2d at 410.

"A minority discount is a reduction in the value of the stock of a party who has a minority interest in a closely held corporation on the theory that the party lacks the voting power to control decisions." *Morgan,* 795 P.2d at 690 (quoting *Hayes v. Hayes,* 756 P.2d 298, 299 n. 7 (Alaska 1988)). "The minority discount is applied on the premise that the owner of the minority interest has limited opportunities to sell and must often discount the sale price because of his minority position." *Id.* (citations omitted).

■ We have previously considered the circumstances that may warrant the application of a minority interest discount in valuing certain property and determined that such valuation method may be appropriate when valuing stock in a closely held corporation due to the stock's limited marketability. *Weston,* 773 P.2d at 410. However, the trial court's failure to apply the minority discount is not error if the court finds that the value of the assets is within the range of values established by all of the testimony. *Id.*

■ In the case at bar, the court valued Dr. Morgan's interest in Eckman–Midgley at $309,214.75, his interest in Sunvest Limited at $92,500, and his interest in Valley Land Partners # 3 Limited at $7,360. Dr. Morgan does not contest these values, but instead simply claims that the trial court abused its discretion by failing to discount such values by a factor of thirty-five percent to reflect his minority interest.

At trial, Dr. Morgan's expert witness, a certified public accountant, testified that a thirty-five percent discount should generally be applied in valuing minority interests in property:

Throughout my practice as a certified public accountant and a business evaluation expert, I repeatedly run into situations where minority investors find them-

selves sustaining significant discounts upon the liquidation of an asset when it is in the form of an investment; by that, I mean, if an investor owns minority shares of stock, they are typically not able to sell them in a closely-held company, at least at full market value as might be obtained from those who have majority control.

While none of Mrs. Morgan's experts testified as to the applicability of the minority discount factor in this case, there was adequate evidence presented at trial as to the fair market value of the respective partnership property. Ultimately, the trial court, in valuing Dr. Morgan's interest in such property, rejected the application of the minority interest discount factor, expressly finding:

V. *Investments in partnerships/corporations.*

A. *Eckman Midgley & Associates— 25% partnership interest ....* Based on the appraisal report of Jerry R. Webber (Exhibit 18), the Court finds the fair market value of the property to be $3,600,000, making [Dr. Morgan's] one-quarter share worth $900,000. The fair market value of [Dr. Morgan's] share must be reduced by one-quarter of the debt on the property, which the Court finds to be $590,785.25, leaving a total net value of [Dr. Morgan's] interest in the partnership of $309,214.75. While [Dr. Morgan] presented evidence that his interest in the partnership should be discounted by 35% because it constitutes a "minority interest", the Court finds that this is not an appropriate instance for application of a "minority interest discount." The Partnership Agreement of Eckman Midgley & Associates, Exhibit 17, provides that the value of the interest of a withdrawing partner shall be determined by appraisal of the partnership property. Thus, the valuation of Dr. Morgan's interest under the Partnership Agreement is based on the fair market value of the property and contains no penalty which would make application of the minority interest discount equitable in this case. This Finding is consistent with the testimony of [Dr. Morgan's] ex-

pert witness regarding the minority discount. Thus, the Court finds that the most credible evidence relative to the fair market value of [Dr. Morgan's] interest in the partnership is the appraisal report, Exhibit 18, prepared by Jerry R. Webber. Specifically, the Court finds that the appraised value is more credible than the unsupported testimony of Mr. Midgley that the value of the property was worth $625,000.00, which is the value relied upon by [Dr. Morgan's] expert witness, Merrill Norman. The Court specifically inquired of [Dr. Morgan's] witness as to whether or not a discounted figure would be appropriate where there was a provision for a buy-out of the interest at fair market value. It is clear that such discount would not be appropriate because the partnership agreements in question provided for a purchase upon a buy-out of a partner based upon fair market value as established by an appraisal. It was not the Court's opinion that [Dr. Morgan] would be required to be forced into a liquidation of these interests which would result in a minority discount for his interest. Therefore, the Court finds that the minority interest discount is not applicable in the case at Bar based upon the evidence believed to be credible by the Court.

. . . .

C. *Sunvest Ltd.—25% partnership interest.* The Court finds the fair market value of Dr. Morgan's partnership interest to be $92,500.00, which coincides with his opinion as to the value of the property.... [Dr. Morgan] has urged the Court to apply a minority discount to [his] one-quarter interest in the investment. The Court finds, however, that the Partnership Agreement, Exhibit 30, provides that the value of a withdrawing partner shall be determined by appraisal of the partnership property, without discount. Therefore, the Court finds that the Partnership Agreement adequately protects [Dr. Morgan] and that it would be inequitable to reduce the value of the asset for a minority interest discount. The Court specifically inquired of [Dr.

Morgan's] witness as to whether or not a discounted figure would be appropriate where there was a provision for a buy-out of the interest at fair market value. It is clear that such discount would not be appropriate because the partnership agreements in question provided for a purchase upon a buy-out of a partner based upon fair market value as established by an appraisal. It was not the Court's opinion that [Dr. Morgan] would be required to be forced into a liquidation of these interests which would result in a minority discount for his interest. Therefore, the Court finds that the minority interest discount is not applicable in the case at Bar based upon the evidence believed to be credible by the Court.

D. *Valley Land Partners No. 3 Ltd. (4.44% interest).* The Court finds the value of this asset to be $7,360, the amount in the capital account as shown by the Schedule K–1 from [Dr. Morgan's] 1986 federal income tax return. [Dr. Morgan] has urged that the Court apply a 35% minority discount to the value of this asset. The Court is not convinced, however, that a forced liquidation of the minority interest is necessary or imminent and that it would be unrealistic and inequitable to apply such a minority discount under the circumstances of this case.

In weighing the evidence before it, the trial court determined that the minority interest discount factor was not applicable in this case, particularly where the respective partnership agreements expressly provided that a withdrawing partner's value would be determined by an appraisal of the partnership property without discount. Because there was sufficient evidence to support the trial court's findings and the trial court's valuation of the partnership property was "within the range of values established by all the [evidence]," *Weston,* 773 P.2d at 410, we conclude that its findings relating to the value of the parties' partnership interests were not clearly erroneous, and its distribution of those interests did not constitute an abuse of discretion. *See id.*

Capital City Bank Line of Credit

■ Dr. Morgan argues that the trial court erroneously failed to adjust the property distribution between the parties to account for a reduction in the Capital City Bank line of credit. Specifically, he claims that the court should not have awarded Mrs. Morgan $15,326.09 of the proceeds from the sale of his share in PSI Limited because those proceeds were used to reduce marital debt on the Capital City Bank line of credit. Mrs. Morgan responds that, pursuant to an agreement between the parties, she is entitled to $15,326.09, one-half of the proceeds from the sale of PSI Limited.

The record in this case indicates that there was a stipulation between the parties that Mrs. Morgan would not block the sale of Dr. Morgan's interest in PSI Limited during the pendency of this action provided she receive a one-half share of the proceeds from the sale. In explaining this to the trial court, Mrs. Morgan's counsel stated, without objection:

[W]e had an understanding that ... we would permit the sale of the condominium to take place because it was contrary to the—we had to consent to that because there was an order not to liquidate assets, but we would permit that to take place so long as Mrs. Morgan eventually got her share of the cash proceeds of that, and she didn't get those cash proceeds, and the fact that the money's now been commingled with [Dr. Morgan's] other money and commingled with other debts doesn't change the fact that Mrs. Morgan should get her share of the cash.

Here, because there was an undisputed agreement between the parties to share equally in the cash proceeds from the sale of PSI Limited, it was improper for Dr. Morgan, unilaterally and pursuant to his unfettered discretion, to elect to apply all of the proceeds to the Capital City Bank line of credit instead of paying Mrs. Morgan her share of the same. This is particularly true because Dr. Morgan was awarded the Capital City Bank line of credit debt as part of the trial court's property divi-

sion, and thus, to adjust the distribution to account for payment of all of the proceeds on that debt would effectuate a double benefit to Dr. Morgan at the expense of Mrs. Morgan. Accordingly, the trial court did not abuse its discretion in failing to adjust the property distribution to reflect the payment on the Capital City Bank line of credit.

## ALIMONY

■ Dr. Morgan claims the trial court abused its discretion in awarding alimony to Mrs. Morgan. "In formulating alimony awards, the trial court has broad discretion, and its decisions will not be overturned absent an abuse of discretion or manifest injustice." *Watson v. Watson*, 837 P.2d 1, 3 (Utah App.1992) (quoting *Schindler v. Schindler*, 776 P.2d 84, 90 (Utah App. 1989)). Dr. Morgan argues that, in awarding alimony to Mrs. Morgan, the trial court did not consider her need for alimony, nor his ability to pay. We disagree.

> In awarding alimony, appellate courts require the trial court to consider each of the following three factors: (1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income for him or herself; and (3) the ability of the responding spouse to provide support. If these three factors have been considered, we will not disturb the trial court's alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion. The ultimate test of an alimony award is whether the party receiving alimony will be able to support him or herself "as nearly as possible at the standard of living ... enjoyed during the marriage."

*Schindler*, 776 P.2d at 90 (quoting *English v. English*, 565 P.2d 409, 411 (Utah 1977)) (citations omitted); *accord Watson*, 837 P.2d at 3.

Contrary to Dr. Morgan's assertion, the trial court, in its amended decree, considered the necessary factors for awarding alimony to Mrs. Morgan. With respect to Mrs. Morgan's need and her ability to produce sufficient income, the trial court found:

> 9. The Court finds that [Mrs. Morgan] and [Dr. Morgan] have been married for thirty-seven years and that during the marriage [Mrs. Morgan's] role was that of homemaker, having raised five children born as issue of the marriage. After working to support the couple while [Dr. Morgan] was attending dental school, [Mrs. Morgan] has not worked outside of the home.... The Court finds that the income that will be generated to [Mrs. Morgan] from the Bel–Aire Apartments and the stocks awarded to her will not be sufficient to allow her to maintain the post-marital lifestyle that [Dr. Morgan] will be able to enjoy nor will it allow her to maintain the lifestyle and standard of living which she enjoyed during the course of the marriage. The Court finds ... that [Mrs. Morgan] has a current need for alimony in the amount of $2000 per month, which should be paid for two years from the date of entry of Decree; thereafter, alimony shall be reduced to $1,700 per month on the assumption that Dr. Morgan's income from his dental practice is likely to decline somewhat because of his age. The Court [is] of the opinion that the only asset of the parties which [Mrs. Morgan] was able to manage and would produce income for her was the Bel–Aire Apartments. While this [is] an extremely complicated and difficult case to separate the assets of the parties, it was clear that the asset management ability of the parties and the expertise involved in financial affairs was that of [Dr. Morgan]. In view of the long marriage and the history of the parties as set forth herein, it was felt that a modest amount of alimony should be required for a period of time to bridge [Mrs. Morgan] into single life but at the same time she should be required to learn to manage the Bel–Aire property and to produce some income for her own benefit.

Further, with respect to Dr. Morgan's ability to pay alimony, Amended Finding of Fact number nine reads:

The Court finds that [Dr. Morgan] will have substantially greater income from his dental practice and partnership investments. The Court finds that [Dr. Morgan] has a current ability [to pay] alimony in the amount of $2000 per month, which should be paid for two years from the date of entry of Decree; thereafter, alimony shall be reduced to $1,700 per month on the assumption that Dr. Morgan's income from his dental practice is likely to decline somewhat because of his age.

The trial court's findings, which are supported by the evidence in the record, clearly demonstrate that it considered the requisite factors in awarding alimony to Mrs. Morgan in this case. *See Watson*, 837 P.2d at 3. Accordingly, the trial court did not abuse its discretion in awarding alimony to Mrs. Morgan.

## ATTORNEY FEES

Dr. Morgan argues that the trial court abused its discretion in awarding attorney fees to Mrs. Morgan. Specifically, he asserts that the trial court did not consider Mrs. Morgan's need for attorney fees or the reasonableness of such award. Mrs. Morgan responds that the trial court properly awarded her attorney fees based on the evidence at trial of both her need and the reasonableness of the said fees.

■ Utah Code Ann. § 30-3-3 (1989) grants trial courts the power to award attorney fees in divorce actions. *See Crouse v. Crouse*, 817 P.2d 836, 840 (Utah App. 1991). "Both the decision to award attorney fees and the amount of such fees are within the sound discretion of the court." *Id.* The award, however, must be based on evidence of the receiving spouse's financial need for attorney fees, the ability of the other spouse to pay, and the reasonableness of the requested award. *Id.* (citations omitted); *accord Andersen v. Andersen*, 757 P.2d 476, 480 (Utah App.1988); *Rasband v. Rasband*, 752 P.2d 1331, 1336 (Utah App.1988).

■ In the case at bar, the evidence established Mrs. Morgan's need for and Dr. Morgan's ability to pay reasonable attorney fees. Based on that evidence, the trial court, in Amended Finding of Fact number eight, stated:

Because the income to [Mrs. Morgan] from the Bel–Aire [Apartments] is uncertain and because [Mrs. Morgan] has no other source of income and because [Dr. Morgan] has received a larger portion of the marital estate than [Mrs. Morgan], the Court finds that [Mrs. Morgan] is without reasonable ability to pay her own legal fees and that [Dr. Morgan] does have such ability and finds that [Dr. Morgan] should pay to [Mrs. Morgan] the sum of $67,567.35 toward her attorneys' fees incurred in this action. . . . [W]hile there was some testimony as to cash flow from the Bel–Aire Apartments, there was no testimony that was clear as to net profitability. There was also testimony as to the condition of the apartments and their need for continuing maintenance. Based on these and other factors, as set forth in the evidence, the Court felt that [Mrs. Morgan] was not in a position to produce a fee for her attorneys out of the assets awarded and the alimony. Thus, inter alia, by reason of the Court's awarding of the larger amount of the net value of assets to [Dr. Morgan] than [to Mrs. Morgan] and his greater ability to produce income out of his dental practice (while the Court recognized that the income from that practice would be declining), the Court was of the opinion and found that the award of the attorneys' fees of [Mrs. Morgan] against [Dr. Morgan] was justified under the circumstances.

Further, with respect to the reasonableness of attorney fee awards, we have stated:

Reasonable attorneys fees are not measured by what an attorney actually bills, nor is the number of hours spent on the case determinative in computing fees. In determining the reasonableness of attorney fees, . . . [a] court may consider, among other factors, the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the

case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Rasband,* 752 P.2d at 1336 (quoting *Cabrera v. Cottrell,* 694 P.2d 622, 624–25 (Utah 1985)).

In the present case, Mrs. Morgan's trial attorney testified at trial as to the reasonableness of his attorney fees:

The total number of hours devoted to this case by myself, and by Mr. Parker, under my direction, and by Ms. Wixom, under my direction, in my opinion, are reasonable and were necessary in the proper representation of [Mrs. Morgan] in this case.

I would further testify that the hourly rate that has been charged by me, of $160 an hour and the hourly rate charged by Mr. Parker for Mr. Parker's time of $95 an hour, and the amount charged for the services of Ms. Wixom of $47.50, and the other persons who have fairly minor time in the case, are reasonable.

The total amount of the bill is higher than the total charges that have been made to [Dr. Morgan] in this case, and I would like to explain something about that, your Honor.

It has been my experience in cases involving professionals, that most of the information concerning the marital estate is in the possession of the husband and the wives very frequently know very little about the financial affairs of the marriage, and usually, virtually nothing about the professional's professional activities, and earnings, and so forth.

When I have represented husbands who were physicians, and I don't recall representing a defendant dentist. But I have represented a number of physicians and other professionals, lawyers, and representing the defendant; the relative fees are about one-half of the fees normally charged by the lawyer representing the woman. And I think it's due to the availability of information to the man, which is not available to the woman.

In addition, the man usually has the professional relationship with the C.P.A.s, or his accountants, and is able to get information from that source not normally available to the woman, except by deposition or request for production, but available to the husband on a relatively informal basis.

In this case, the time was further complicated by what is an unusual, in fact, unique in my experience; [Dr. Morgan] actually engaged three lawyers and we were informed that he was represented by a fourth, which I think he was probably not, but perhaps considering. This came at various stages of the pre-trial discovery. And at the time where it complicated a great deal of our efforts to obtain information.

We had been dealing with one lawyer and we had been pressing for supplementation or better responses, or more production, and extending over consideration periods of time. And then we would find ourselves dealing with another lawyer and actually have to repeat that process again, because we would have to point out what we felt we were entitled to and why we hadn't gotten it, and so forth. And it amounted to a repetitive process of, in a sense, educating the other lawyers as to what our needs were, and why we felt they hadn't been met, and getting more information.

I have not experienced that before, and it was very frustrating and took a lot of time. I think it's fair to say, that at least in my opinion and from my perspective, that getting information out of the doctor, if I may say this, was like pulling teeth. It was very, very difficult. We would repeatedly request information and we would be given some and we would be given not all. We would be told that there isn't any more, and then we would have to go to this outside discovery until we felt that we needed really pretty much, to dispose of the significant business interests that he was involved in.

Based on that testimony, the trial court found:

**570**

8. [Mrs. Morgan's] attorneys' fees in the amount of $67,567.35 are reasonable. The Court finds that this was a complicated estate and presented difficult legal and factual issues under the best of circumstances. The task of locating and valuating the assets of the marital estate [was] complicated and made more difficult by [Dr. Morgan's] failure to cooperate, thereby necessitating extensive formal discovery.

In the instant case, the evidence was sufficient to support the trial court's findings that Mrs. Morgan has a need for attorney fees, that Dr. Morgan has the ability to pay those fees, and that such fees were reasonable. Accordingly, the trial court did not abuse its discretion in awarding attorney fees to Mrs. Morgan.[5]

### CONCLUSION

Dr. Morgan's objection to the trial court's amended findings of fact and conclusions of law concerning the distribution of the parties' stocks is moot. Further, the trial court did not abuse its discretion in valuing and distributing the parties' property, nor in awarding alimony and attorney fees to Mrs. Morgan. Accordingly, we affirm.

BENCH and BILLINGS, JJ., concur.

---

[5.] While the trial court did not abuse its discretion in awarding attorney fees to Mrs. Morgan, the record reflects, and Mrs. Morgan concedes, that the trial court miscalculated the amount of fees to be awarded. In the prior appeal, we determined that the trial court improperly awarded $11,617.44 in costs to Mrs. Morgan.

*See Morgan v. Morgan,* 795 P.2d 684, 686 (Utah App.1990). Subtracting the disallowed costs from $75,000 (the combined amount initially awarded by the trial court), the correct amount of attorney fees is $63,382.56, not $67,567.35 as calculated by the trial court on remand.